People of the State of Illinois, Appellee, v. James Reynolds, Appellant.

Gen. No. 49,605.

First District, Third Division.
June 24, 1965.
Rehearing denied September 16, 1965.

Milton Blum, of Chicago, for appellant.

Daniel P. Ward, State's Attorney of Cook County, of Chicago (Elmer C. Kissane and Paul A. O'Malley, Assistant State's Attorneys, of counsel), for appellee.

MR. JUSTICE SULLIVAN delivered the opinion of the court.

This is an appeal by defendant, James Reynolds, seeking reversal of his conviction for rape following a bench trial in the Circuit Court of Cook County. He was sentenced to imprisonment for a term of 10 to 30 years.

Immediately after judgment was entered on the finding, the court denied oral post-trial motions for a new trial and in arrest of judgment. Thereafter written

motions for judgment notwithstanding the findings and for a new trial were also denied.

The defendant contends (1) that penetration, a necessary element in a prosecution for rape, was not proven beyond a reasonable doubt, either by direct or circumstantial evidence, and (2) the testimony of the complainant, which was not corroborated, was insufficient, standing alone, because such testimony was not clear and convincing and the defendant denied the charge.

Frances DeMar, age 10, the victim, testified that she lived with her mother, a 7-year-old brother and two sisters, ages 2 and 3, in a second floor apartment located at 4460 South Shields, Chicago. She was in the fifth grade at the time of the attack. She had known the defendant for about one year before the commission of the offense. The defendant had been a regular overnight visitor to the apartment, and on the occasion of such visits he had occupied the same bed with her mother. Frances occupied a bedroom with her two sisters adjoining her mother's bedroom.

Frances related the following version of the alleged rape and the occurences leading up to it:

On the evening of November 16, 1963, the defendant dined with Mrs. DeMar and her children and, afterwards, joined Mrs. DeMar in drinking intoxicating beverages. Later that evening, Mrs. DeMar retired. The younger children then went to bed, and when Frances retired the defendant was reading "comics" in the dining room. She awakened while it was still "dark outside," went to the bathroom and turned on the light. After she had used the toilet, the defendant entered the bathroom, closed the door and threatened to kill her. The defendant began choking Frances, placed her on the floor of the bathroom and removed her pajamas. The defendant was dressed in a shirt

and trousers, with the trousers open, exposing his "underpants." The defendant assumed a kneeling position in front of her, spread her legs apart and placed himself in between her legs. He started choking her again and then she felt him jumping up and down by her "privates" or "crotch."

Frances further testified that she then went to her bedroom and the defendant went into her mother's bedroom. She went to sleep, and, when she awakened, early in the morning, she went into her mother's room and got in bed with her. Her mother was asleep, and the defendant, at this time, was sleeping on the couch in the dining room. After the defendant left the apartment in the morning, Frances observed blood on her mother's bed in the area where she had slept and also on the crotch area of her pajama pants. When her mother got up, Frances told her "what had happened." Later the same day, the defendant came back to the apartment, talked to Mrs. DeMar in the living room, came into Mrs. DeMar's bedroom where Frances was, went back into the living room and continued talking with Mrs. DeMar and then left. He came back later on and stayed all night. Several days later Frances told policemen that a tall man with a scar, taller than the coat rack in the police station had hurt her. She made that statement on three separate occasions.

The defendant was not a tall man and he had no scar. Frances, however, testified in court that the reason she had described another person, after first accusing the defendant, was that she was afraid because the defendant had threatened to kill her.

Frances further testified that on Thursday, four days after the alleged rape, she was taken to Cook County Hospital. While she was there, she saw the defendant twice. The first time, he came with Mrs. DeMar for a visit. The second time he came with a policeman and Mr. DeMar.

Harold DeMar, the father of Frances, testified that he was married to Frances' mother but was separated from her for several years. On November 21, 1963, four days after the alleged assault, he went to Mrs. DeMar's apartment accompanied by three police officers. He stated that Frances appeared nervous and and cried when asked what was wrong with her. They took her to Provident Hospital, from there to the police station and finally to Cook County Hospital. About two weeks after Frances was admitted to the Cook County Hospital, Mr. DeMar, together with the defendant and two police officers, visited Frances in the hospital. The defendant remained silent after being identified by Frances as the one who had "hurt her."

Dr. John Raffensperger, a pediatrician and surgeon, testified than an external and rectal examination was made on November 21, 1963 of Frances DeMar, and it disclosed a penetrating injury to her vagina that extended into the rectum causing a great deal of hemorrhage. On November 25, 1963, he performed an operation upon Frances DeMar, repairing the damage to her vagina and rectum. It was his opinion that the depth of the penetrating injury was from 6 to 7 inches and that the cause was due to an "assault."

Officer Clarence Moore testified that he saw Frances DeMar on November 23, 1963, and that he arrested the defendant on December 10, 1963, after being informed on December 9, 1963, by Mr. DeMar that his daughter had named the defendant as the person responsible for the offense.

Mrs. DeMar, mother of Frances, called as a witness on behalf of the defense, corroborated her daughter's testimony that, on the morning following the alleged rape, Frances made a complaint to her naming the defendant. Mrs. DeMar said that Frances admitted that the defendant had "bothered her."

Mrs. DeMar futher testified that the defendant arrived at her apartment later the same day. She confronted him with Frances' accusation, and the defendant denied having done anything. They then went into the room where Frances was, and Frances denied that she had accused the defendant.

Mrs. DeMar also corroborated her daughter's testimony that at the police station Frances said a tall man with a scar was the one who had "hurt her."

Under cross-examination Mrs. DeMar readily admitted that she was intoxicated during the time her daughter was assaulted. She first told her mother, Mrs. Ada Dalton, about the attack two days following Frances' accusation against the defendant. The police were not informed of the offense until Frances' father brought them to the apartment four days later.

Mrs. DeMar also admitted that the defendant was her "boyfriend," and that she shared her bed with him on occasion.

The defendant admitted that he visited the apartment in question on the evening of November 16, 1963, and that he consumed most of a quart of beer and a half pint of gin. He also stated that Mrs. DeMar preceded her children to bed. He testified that he left the apartment between 8:00 and 8:30 p. m. and continued drinking gin and beer at several taverns. He returned to the DeMar apartment about 5:00 a. m. on November 17, 1963, but was unable to enter the apartment. He then proceeded home, slept and returned the same day at 8:00 a. m. Upon his return to the apartment Mrs. DeMar told him, "Frances said you had her." The defendant explained that the expression "had her" conveyed to him the meaning of "sexual intercourse." He didn't say anything in reply because, as he put it, he "was stunned." Mrs. DeMar then took him in to see Frances, and Frances denied that she had accused the defendant.

Defendant further testified that he went to the hospital to visit Frances and he donated blood for her. Subsequently, at the time of his arrest, he was taken to the hospital where Frances identified him for the police officers.

Defendant denied attacking Frances and said that he was unable to conceive of any reason why she would accuse him.

■ It is defendant's first contention that the state failed to prove beyond a reasonable doubt the element of penetration, which element is necessary in order to obtain a conviction in a prosecution for the offense of rape. He argues that the complainant never gave any description of an act or acts which would clearly indicate a penetration, and there was insufficient circumstantial evidence presented by the prosecution to support a finding that a penetration did in fact occur. In support of this contention, defendant relies upon the holdings of courts of foreign jurisdiction. The cases cited by the defendant are distinguishable from the case at bar, and, at any rate, we are not bound by the tests established in such foreign jurisdictions. The law in this state is that the slightest penetration is sufficient to establish carnal knowledge and penetration may be shown by circumstantial evidence. (People v. Schultz, 260 Ill 35, 102 NE 1045; People v. Krotz, 341 Ill 214, 172 NE 135.)

■ The complainant's testimony in the instant case, that the defendant took off her pajamas, placed himself between her legs, and she then felt him jumping up and down by her "crotch" or "privates," when taken alone, may not be sufficient to establish the element of penetration, but when taken together with the testimony that the following morning she found blood in the bed and in the crotch of her pajamas and the testimony of the medical witness describing a penetrating injury, the evidence as a whole becomes clearly suf-

355

ficient to warrant the trial judge's finding that the element of penetration was proven beyond a reasonable doubt.

We now come to defendant's second point that the testimony of the prosecuting witness was not corroborated, and standing alone it is not sufficiently clear and convincing to support a finding of guilty. Defendant in support of his contention that the prosecuting witness' testimony was not reliable, points to the testimony that although she made a prompt complaint in which she named him as the offender, she retracted her accusation with equal promptness, and on three different occasions she described her assailant as a tall man with a scar.

■ The case which comes closest to supporting defendant's contention is the case of People v. White, 26 Ill2d 199, 186 NE2d 351, in which the Supreme Court reversed the trial court's judgment finding the defendant guilty of the crime of rape. In that case the prosecuting witness, who was thirteen years of age at the time of the trial, testified that on February 13, 1960, about 9 or 10 p. m., she went to bed in her bedroom with her four year old brother. Sometime after 11 p. m. she awoke and discovered the defendant having intercourse with her. She told the defendant to get up, and, sometime later, he did get up and gave her two dollars. She went to the washroom and then back to sleep. Her brother never awakened. Later, her mother returned home and found the defendant lying fully clothed, on top of the covers, in the bed in which the prosecutrix and her brother were sleeping. Upon her mother inquiring as to whether defendant had done anything to her, prosecutrix said, "No." The prosecuting witness' mother corroborated the presence of the defendant on her daughter's bed and also her denial that defendant did anything to her. She also testified that the next morning the prosecutrix again

356

denied that defendant "approached" her, although the mother at that time urged her daughter not to lie to her. The court set forth the general rule that the testimony of a prosecutrix, uncorroborated by other witnesses, may be sufficient to justify a conviction if such testimony is clear and convincing, but if the testimony is not clear and convincing, then corroborative evidence must be produced to support her testimony if there is a denial by the defendant.

The court on page 202 said:

> "While the testimony of the prosecutrix in this case is clear as to the alleged act itself, yet the record further establishes her denial to her mother, not once, but twice, that anything happened, and there is no showing when or why she accused defendant other than the fact of his arrest six months later.

> "The mother's testimony corroborates only the presence of the defendant, fully clothed, lying on top of the covers on the bed with the brother lying between defendant and prosecutrix, and her daughter's repeated denial that anything had occurred. The physician's testimony does not corroborate as to the defendant's guilt, but tends to establish only that prosecutrix must have had intercourse with someone about six months previous to the examination."

■ The White case is distinguishable from the case at bar. In the instant case, the prosecuting witness made a complaint to her mother naming the defendant. Although there is testimony that she retracted this accusation a short time after having made it, such testimony was given by the defendant himself and by Mrs. DeMar who appeared as a witness for the defense. The trial judge stated that he placed very

357

little credence in the testimony of these two witnesses, and the proposition that the credibility of the witnesses is a question for the trier of fact is too well established to require a citation of authority. Even if the complainant did withdraw her accusation when confronted with it by her mother in the presence of the defendant, such action was readily explained by her testimony that the defendant had threatened her, and she was afraid. This is a far cry from the apparent unconcern shown by the prosecutrix in the White case until she discovered she was pregnant some six months later. The prosecuting witness' story about a tall man with a scar can similarly be explained by her fear of what the defendant might do if she named him as her assailant.

█ There is also an element of corroboration in the instant case that was not present in the White case. When defendant was taken to the hospital by the police officers and was identified by the prosecuting witness as the one who "hurt her," he remained silent.

The following language from People v. Smith, 25 Ill2d 219, 224, 184 NE2d 841, is equally applicable to the case at bar:

"Our case law reiterates the rule that an admission may be implied from the silence of one who is accused of a crime, on the ground that 'it is the nature of innocence to be impatient with a charge of guilt, and an innocent person will usually spontaneously deny the accusation and challenge the charge.' (People v. Bennett, 3 Ill2d 357; People v. Nitti, 312 Ill 73, 90.) The silence is viewed in the same category as flight or similar conduct reflecting upon defendant's innocence or guilt, rather than as a confession. (People v. Nitti, 312 Ill 73, 92.) In order that silence may

be deemed an admission, however, it must appear that the accused heard the accusation, and that it was made under circumstances which allowed an opportunity for the accused to reply, and where a man similarly situated would ordinarily have denied the imputation. People v. Bennett, 3 Ill2d 357, 361."

In the case at bar defendant was taken to the hospital for purposes of identification and was present in the room when the prosecuting witness was asked if he was the one who had hurt her. He was well aware of the charge being made against him. From his own testimony it appears that Mrs. DeMar told him that Frances had, on the morning after the assault, accused him of having sexual intercourse with her. He had visited Frances in the hospital and donated blood. He knew of the prosecuting witness' injuries. Under the circumstances, his failure to deny the accusation was an unnatural act and can be taken as an admission which tended to corroborate the prosecuting witness' story.

The testimony of the prosecuting witness was sufficiently clear and convincing, when combined with the corroboration supplied by the silence of the defendant at the time of the accusation, to warrant the trial judge's belief in the truth of her story.

For the foregoing reasons, the judgment of the Circuit Court of Cook County is affirmed.

Affirmed.

DEMPSEY, P. J. and SCHWARTZ, J., concur.