372 So.2d 283 (1979)
Gary Santaw TATRO
v.
STATE of Mississippi.
No. 50907.
Supreme Court of Mississippi.
May 30, 1979.
Rehearing Denied July 11, 1979.
Fielding L. Wright, Jr., James H. Heidelberg, Pascagoula, for appellant.
A.F. Summer, Atty. Gen., by Karen Gilfoy, Asst. Atty. Gen., Jackson, for appellee.
Before SMITH, SUGG and COFER, JJ.
SMITH, Presiding Justice, for the Court:
Gary Santaw Tatro was convicted of violating Mississippi Code Annotated section 97-5-23 (1972), which is sometimes referred to as the "Fondling Statute." Following his conviction in the Circuit Court of Jackson County, Tatro was sentenced to serve eight years imprisonment. He has appealed, assigning as a ground for reversal, among others, that the statute under which he was convicted unconstitutionally discriminates against males and is void for that reason.
The statute provides:
Any male person above the age of eighteen years, who for the purpose of gratifying his lust, or indulging his depraved licentious sexual desires, shall handle, touch or rub with hands or any part of his body or any member thereof, any child under the age of fourteen years, with or without his consent, shall be guilty of a high crime... .
The statute provides for punishment extending to ten years imprisonment.
The statute applies not to "any" person, but only to "any male person" above eighteen years. It proscribes "handling, touching or rubbing with hands or any part of the body or member thereof any child (without regard to sex) under the age of fourteen years, (with or without the child's consent) when done for the purpose of gratification of lust, or of indulging depraved licentious sexual desires.
The offense proscribed is not a common law offense. Love v. State, 211 Miss. 606, 52 So.2d 470 (1951).
In the recent case of Orr v. Orr, ___ U.S. ___, 99 S.Ct. 1102, 59 L.Ed.2d 306 (1979), a civil case, the United States Supreme Court, on finding an Alabama alimony statute unconstitutionally discriminated against men, observed:
... The fact that the classification expressly discriminates against men rather than women does not protect it from scrutiny. Craig v. Boren, 429 U.S. 190, 97 S.Ct. 451, 50 L.Ed.2d 397 (1976). "To *284 withstand scrutiny" under the equal protection clause, "`classifications by gender must serve important governmental objectives and must be substantially related to achievement of those objectives.'" Califano v. Webster, 430 U.S. 313, 316-317, 97 S.Ct. 1192, 1194, 51 L.Ed.2d 360 (1977)....
The Court also said:
Second, the challenged statute may saddle members of one sex with a burden not borne by similarly situated members of the other sex. Standing to attack such a statute lies in those who labor under its burden... .
Unquestionably women are as capable of performing the physical acts prohibited by the Mississippi "Fondling Statute" as are men, and for the same purposes. We are unable to conceive any sound or rational basis for making the statute applicable to "male" persons only, while wholly excluding "female" persons who may do the same thing for the same reasons, and none has been pointed out to us. Apparently, under the plain terms of the statute, female persons could commit the acts constituting the crime, for the purposes set forth in the statute, with absolute impunity, while a male, who did the same thing, would be subject to conviction of a felony and to imprisonment for a term of as much as ten years.
It is suggested that the reasons upon which the Court upheld the "Peeping Tom" statute in Green v. State, 270 So.2d 695 (1972), support the validity of the statute now under consideration. We are unable to agree.
No cogent reason is assigned for the patent discrimination against males, nor is it pointed out that such unequal treatment serves any traditional, governmental or public policy or is based upon a rational distinction based upon sex.
While no testimony seems to be necessary, Dr. Bridges, whose qualifications as an expert were stipulated, testified in this case that "from a psychological standpoint it is my opinion that a woman could be just as guilty of this offense as a man."
An Oklahoma statute was held to have resulted in an unconstitutional denial of equal protection of law when it provided that seventeen year old male criminal defendants were to be prosecuted and sentenced as adults, whereas female defendants of like age were to be accorded the advantages of juvenile proceedings. Radcliff v. Anderson, 509 F.2d 1093 (1974) certiorari denied 421 U.S. 939, 95 S.Ct. 1667, 44 L.Ed.2d 95 (1975).
In People v. Yocum, 31 Ill. App.3d 586, 335 N.E.2d 183 (1975), it was held that a sex-based distinction in criminal statutes is a "suspect classification" under the Bill of Rights and must be able to withstand strict judicial scrutiny to be valid. The Court held that inasmuch as sexual intercourse or act of deviate sexual conduct performed by a mother with an adopted son or stepson is not prohibited, but such acts are prohibited by the statute when performed between a father and his stepdaughter or adopted daughter under the age of eighteen, conviction of the defendant of aggravated incest because of conduct occurring between him and his adopted daughter must be reversed because of an unconstitutional discrimination.
In Commonwealth v. MacKenzie, 368 Mass. 613, 334 N.E.2d 613 (1975) the Massachusetts Court held that imposition of a criminal sentence upon the father alone under a statute providing that whoever, not being the husband of the woman, gets her with child, would be guilty of a misdemeanor for the getting of the child, violated equal protection clauses of the Constitution.
Under the "Fondling Statute" if the child is under fourteen years old, the crime may be committed upon it regardless of the child's sex and whether it consents or does not consent.
An unconstitutional law is void, and is as no law. An offense created by it is not a crime. A conviction under it is not merely erroneous, but is illegal and void, and cannot be a legal cause of imprisonment. .. . (Fay v. Noia, 372 U.S. 391, 408, 83 S.Ct. 822, 832, 9 L.Ed.2d 837, 850-851) (1963).
The legislative intent to confine application of the statute to male persons, not *285 simply to "any" person as in most criminal statutes, manifests an intentional exclusion of females. The word "male" in the statute cannot be ignored without destroying the clear legislative intention to limit application of the statute to males. It may not be struck out without judicially creating a crime, without legislative sanction, under which females could be convicted and sentenced. This Court may not create a crime by construction.
Designed to protect children from becoming the objects of erotic behavior on the part of adults, the purpose of the statute is salutary. It appeared as section 1142(c) of the 1921 Supplement to Hemmingway's Code, at a time when sex was regarded as a personal and private matter between consenting adults. The exclusion of females was due, perhaps, to some vestigial chivalric notion that women were incapable of the acts proscribed. Today, we have witnessed in the streets of our cities the parading about of persons, women as well as men, publicly proclaiming themselves to be sex deviates and demanding "rights" as such. The stage and screen appear to have become obsessed with the portrayal of explicit sex. Pornography has become an ill of our times. We learn from the news media of the use of children by adults for the purpose of prostitution, by men as well as by women, and sometimes by their own parents. Limiting application of the statute to men can be no longer be said to be realistic, if it ever was. It is the Legislature's prerogative to correct the defect in the statute and the matter is commended to that body for its consideration.
We have concluded that the statute is clearly discriminatory and unconstitutionally denies equal protection of the law to males and is, therefore, void.
For the reasons stated the appellant's conviction is reversed and he is discharged.
REVERSED AND APPELLANT DISCHARGED.
THIS CASE WAS CONSIDERED BY A CONFERENCE OF THE JUDGES EN BANC.
PATTERSON, C.J., ROBERTSON, P.J., and WALKER, BROOM and COFER, JJ., concur.
SUGG, LEE and BOWLING, JJ., dissent.
SUGG, Justice, dissenting:
I dissent because we may strike the word "male" from the statute[1] thereby removing the gender based distinction prohibited by the Fourteenth Amendment to the United States Constitution. We may strike the word "male" under the well established rule that: it is the Court's duty in passing on the constitutionality of a statute, to separate the valid from the invalid part if this can be done, and to permit the valid part to stand unless the different parts of the statutes are so intimately connected with and dependent upon each other as to warrant a belief that the legislature intended them as a whole; and that if all cannot be carried into effect, the legislature would have enacted the valid part independently. Lovorn v. Hathorn, 365 So.2d 947 (Miss. 1979); O'Neal v. Simpson, 350 So.2d 998 (Miss. 1977); Wilson v. Jones County Board of Supervisors, 342 So.2d 1293 (Miss. 1977); Howell v. State, 300 So.2d 774 (Miss. 1974); American Express Co. v. Beer, 107 Miss. 528, 65 So. 575 (1914); Adams v. Standard Oil Co., 97 Miss. 879, 53 So. 692 (1910); Campbell v. Mississippi Union Bank, 7 Miss. 625 (1842).
In O'Neal, supra, we held that, where part of a statute is valid and another part invalid, the presumption arises that the legislature intended to enact the valid part if it is separate and distinct from the invalid part and is not dependent on the invalid part. The valid part of the statute under consideration does not depend on the word "male" and is separable from the invalid *286 part. A reading of the statute demonstrates this.
After striking the word "male" from the statute, the masculine pronoun "his" would remain in the statute in two places; however, under the provisions of section 1-3-17 Mississippi Code Annotated (1972), "words in the masculine gender shall embrace a female as well as a male, unless a contrary intention may be manifest."
In Spears v. State, 278 So.2d 443 (Miss. 1973), we held that Section 1 of the Mississippi Abortion Statute [section 97-3-3 Mississippi Code Annotated (1972)] was constitutional with the exception of subsections (a) and (b) and let a conviction under the statute stand after declaring part of the criminal statute constitutional and part unconstitutional.
In Spears v. Ellis, 386 F. Supp. 653 (1974); affirmed 423 U.S. 802, 96 S.Ct. 9, 46 L.Ed.2d 23 (1975), the Mississippi Abortion Statute was considered after our decision in Spears, supra. A three judge court held that the remaining portion of the Mississippi Abortion Statute was not overbroad, vague or indefinite.
The United States Supreme Court has held that the invalid part of a statute may be dropped without affecting the remainder if the valid part is fully operative and there is no showing that the legislature would not have enacted valid provisions independently. U.S. v. Jackson, 390 U.S. 570, 88 S.Ct. 1209, 20 L.Ed.2d 138 (1968). The United States Supreme Court also held in Carter v. Carter Coal Co., 298 U.S. 238, 56 S.Ct. 855, 80 L.Ed. 1160 (1936), that, to hold one part of a statute unconstitutional and uphold another part as separable, parts must not be mutually dependent on one another.
In Roe v. Wade, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973), the United States Supreme Court held that Article 1196 of the Texas Abortion Statute was unconstitutional because no distinction was made between abortions performed early in pregnancy and those performed later. The remaining portion of the abortion statute was not permitted to stand because it did not permit abortions under standards announced in the case.
Under the rules of construction of statutes announced by both the United States Supreme Court and this Court, we may strike the word "male" from the statute, thus leaving a complete and consistent statute neutral in gender. This would not create a common law crime but would simply enlarge the class of persons subject to punishment.
The fondling statute was first enacted as Section 1, Chapter 215, Mississippi General Laws (1920), and was passed "For the better protection of female children of tender years against the insults of lustful male persons." It was amended in 1958 to "prohibit the violation of the persons of all children under the age of 14 years." The 1958 amendment evidences the legislature's awareness of changing sexual mores. When the statute was originally enacted the Fourteenth Amendment to the United States Constitution had not been applied by the United States Supreme Court to criminal statutes and criminal procedures of the several states of the Union. Undoubtedly, the legislature would have included females in the original statute if the Fourteenth Amendment had then been construed as a prohibition against statutes which saddle members of one sex with a burden not born similarly by members of the other sex. Under the changing sexual mores of our society we must now face up to the fact, as testified by one of the witnesses, that "from a psychological standpoint it is my opinion that a woman could be just as guilty of this offense as a man."
The purpose of the legislature in enacting the statute was to protect children from becoming the objects of erotic behavior on them by adults. This overriding purpose of the statute should not be overlooked and should be the polestar that guides us in determining whether the statute is constitutional.
I recognize the familiar principle that criminal and penal statutes are to be construed strictly and this rule of construction is predicated on the law's tenderness for *287 individual rights. However, the Court may, and I conceive it to be our duty, to construe statutes so as to preserve the intent of the legislature by striking the unconstitutional part from a statute, provided the remainder is fully operative.
If the word "male" is stricken from the statute, it would then apply with equal force to both sexes. Of course this holding would be subject to the due process and ex post facto provisions of both the federal and state constitutions. However, striking the word "male" from the statute, would not violate due process or the prohibition against ex post facto laws in this case because the defendant is a male and the statute as written gave him notice that his conduct was unlawful. In Bouie v. Columbia, 378 U.S. 347, 84 S.Ct. 1697, 12 L.Ed.2d 894 (1964) the Supreme Court stated:
Indeed, an unforeseeable judicial enlargement of a criminal statute, applied retroactively, operates precisely like an ex post facto law, such as Art. I, § 10, of the Constitution forbids. An ex post facto law has been defined by this Court as one "that makes an action done before the passing of the law, and which was innocent when done, criminal; and punishes such action," or "that aggravates a crime, or makes it greater than it was, when committed." Calder v. Bull, 3 Dall 386, 390 [3 U.S. 386], 1 L.Ed. 648 [650]. If a state legislature is barred by the Ex Post Facto Clause from passing such a law, it must follow that a State Supreme Court is barred by the Due Process Clause from achieving precisely the same result by judicial construction. Cf. Smith v. Cahoon, 283 U.S. 553, 565, 51 S.Ct. 582 [586], 75 L.Ed. 1264, 1273. The fundamental principle that "the required criminal law must have existed when the conduct in issue occurred," Hall, General Principles of Criminal Law (2d ed 1960), at 58-59, must apply to bar retroactive criminal prohibitions emanating from courts as well as from legislatures. If a judicial construction of a criminal statute is "unexpected and indefensible by reference to the law which had been expressed prior to the conduct in issue," it must not be given retroactive effect. Id., at 61. (378 U.S. at 353, 354, 84 S.Ct. at 1702, 1703, 12 L.Ed.2d at 899, 900).
The judicial construction which I favor would not constitute retroactive application to the defendant in this case because he is a male, and the statute as written gave him notice that his acts were unlawful. Striking the word "male" from the statute would not constitute creation of crime by the court, but would constitute enlargement by judicial construction, of a crime created by the legislature by making the statute apply with equal force to both sexes.
A different result would be reached if the defendant was a female because the notice requirement would not be satisfied. After striking the word "male" from the statute, females would then be put on notice that the crime of fondling applied to them after the publication of our opinion.
I would affirm.
LEE and BOWLING, JJ., join this dissent.
NOTES
[1] Section 97-5-23 Mississippi Code Annotated (1972) provides in part:

Any male person above the age of eighteen years, who, for the purpose of gratifying his lust, or indulging his depraved licentious sexual desires, shall handle, touch or rub with hands or any part of his body or any member thereof, any child under the age of fourteen years, with or without his consent, shall be guilty of a high crime ...