396 So.2d 1031 (1981)
James MINOR
v.
STATE of Mississippi.
No. 52453.
Supreme Court of Mississippi.
April 8, 1981.
William Carl McGehee, Jr., Leonard H. Rosenthal, Natchez, for appellant.
Bill Allain, Atty. Gen., by Charles W. Maris, Jr., Sp. Asst. Atty. Gen., Jackson, for appellee.
Before SMITH, P.J., and LEE and BOWLING, JJ.
BOWLING, Justice, for the Court:
Appellant James Minor was indicted, tried and convicted in the Circuit Court of Adams County for the rape of a two-year old female child and sentenced to a life term under the custody of the Department of Corrections. The principal error alleged is that the trial court should have sustained appellant's motion for a directed verdict of acquittal.
In deciding the question as to whether or not there was sufficient evidence to submit the case to the jury, we have to review at least a portion of the evidence to ascertain its sufficiency to withstand the motion. The record reveals a rather sordid set of circumstances, some of which even the writer of this opinion hesitates to put in print. As stated above, however, the general evidence in the case is necessary to be related.
The testimony revealed that appellant James Minor was the "boyfriend" of the victim's mother, and that she already had one illegitimate child by appellant and another was on the way. This is material as later shall be pointed out in the testimony.
During the early part of the evening on July 9, 1979, the Natchez Police Department was called to the residence of the victim's aunt. Upon arriving they found the victim, the child's mother, the mother's sister, other members of the family and appellant. The child was lying on a bed. The officers promptly saw that bloody underwear and shorts were lying near the victim and that she was bleeding from the vaginal area. One of those present asked the child who "laid on her" and did that. *1032 The child said, "James", and pointed to appellant. Minor stated at that time that he had found the child outside the house where the child's mother, the mother's sister and other family members and relatives lived. Although not being placed under immediate arrest, appellant agreed upon request of the officers to show them where he found the child. The testimony of both officers was that they thoroughly examined the area pointed out to them by appellant and could find no evidence that indicated the alleged rape had occurred in that area. Appellant was then requested to lower his pants and permit a visual inspection by the officers. This was done voluntarily by appellant. Both officers testified that they immediately saw red stains on the inside of appellant's undershorts and saw red stains on his private parts, which they thought to be blood. It was then decided to carry the child to the hospital and appellant was requested to accompany them for the purpose of being examined. An officer testified that appellant told him that he got blood on his private parts while having sexual relations that day with the victim's mother.
A physician at the hospital made up what in legal terms is known as a "rape kit" on both the child and appellant. This kit included clothing, samples of substances removed from the bodies of the persons involved and any other evidence secured in the area involved. These kits were sealed and turned over to the officers, who in turn delivered them to the Mississippi Crime Laboratory for examination.
Testimony was received from the expert who examined the evidence. He performed certain tests including blood tests. He identified the red stains on appellant's shorts as being blood of O type. There was no evidence of Type B blood on appellant. It had been ascertained that the child's mother has type B blood. Both appellant and the child had O type blood.
Evidence was received from a next door neighbor to the residence of the victim and her family. He was leaving his home on his bicycle when he saw appellant come off the porch where the victim lived, holding the victim by the hand. He saw them walk toward the house across the street as he rode away on his bicycle.
Testimony was received from a fellow inmate in the County Jail who testified that appellant admitted the rape to him.
Testimony was received from the victim's mother. She verified that she had one child by appellant and was pregnant with another by him. She further stated that she did not have sexual relations with appellant on the day in question.
Appellant James Minor testified on his own behalf. It should be stated that prior to trial and on motion of appellant's attorney, he was sent to the Mississippi State Hospital at Whitfield for psychiatric evaluation. The report from the examining physician was that appellant is a "rather impulsive young man as shown by his previous record," but that he was "without psychosis and considered to be competent and responsible." Of course, this report was not presented to the jury and is related in this opinion in discussing the proceedings set out in the record. On cross examination appellant, in having his testimony attempted to be impeached by the state, as it had legal right to do, admitted that although twenty-three years of age, he was convicted of assault in 1975 and 1977, trespassing in 1976, disturbing the peace and resisting arrest in 1976, burglary in 1976, public drunk in 1977, and disturbing the peace and resisting arrest in 1977.
Minor's defense was that on the night in question he was looking for the child in the neighborhood after she had wandered away from the house. While so looking, a tick had gotten on his private parts and that the blood was caused when he scratched the tick bite.
We believe that we have related a sufficient amount of the evidence as shown by this record to make it readily apparent that there was ample evidence to present the case to the jury, as was done by the trial court.
The appellant also assigns as error that as he was charged with a capital crime, *1033 he should have received a bifurcated trial on punishment and sentence before either the same or a different jury pursuant to the provisions of Section 99-19-101, Mississippi Code 1972 Annotated, (Supp. 1980). We note that the record does not show a ruling on this matter by the trial court, and the failure of appellant to secure a ruling constitutes a waiver. Martin v. State, 354 So.2d 1114 (Miss. 1978). Secondly, appellant's motion for a new trial does not mention the issue of sentencing and no objections were raised at the time of sentencing. Lastly, and most importantly, the state announced at the beginning of the trial that it was not seeking the death penalty. The jury found appellant "guilty as charged." The lower court was then completely within its authority to sentence appellant to a life term. There being no reversible error in the cause, and the evidence partially hereinbefore related being abundant to raise a jury question, we have no choice but to affirm the conviction and sentence.
AFFIRMED.
PATTERSON, C.J., SMITH and ROBERTSON, P. JJ., and SUGG, WALKER, BROOM, LEE and HAWKINS, JJ., concur.