452 So.2d 438 (1984)
Thomas JACKSON
v.
STATE of Mississippi.
No. 54178.
Supreme Court of Mississippi.
March 28, 1984.
Rehearing Denied July 18, 1984.
Sidney A. Barnett, A.M. Murphy, Lucedale, for appellant.
Bill Allain, Atty. Gen. by Bill Patterson, Sp. Asst. Atty. Gen., Jackson, for appellee.
Before WALKER, P.J., and HAWKINS and ROBERTSON, JJ.
*439 HAWKINS, Justice, for the Court:
Thomas Jackson appeals his conviction in the Circuit Court of George County of the crime of carnal knowledge of a six-year-old girl, and sentence to life imprisonment. He challenges the validity of Miss. Code Ann. § 97-3-65 (Chapter 576, Mississippi Laws 1974) under which he was indicted, and the sufficiency of the evidence in view of no proof of penetration. We affirm.

FACTS
On July 15, 1980, Darrell E. Thomas, a 21-year-old man was spending the night with his sister and brother-in-law, Evon and Larry Tanner, at their residence in George County. Mr. and Mrs. Tanner had three children: Freddie, age 7; Wendy, age 6; and Alan, age 3.
When they retired for the evening, Mr. and Mrs. Tanner went to their bedroom. Thomas and Alan were sleeping on one bed in the children's bedroom, and Freddie and Wendy on the other bed. A light in the bathroom was on which gave some light in the children's bedroom.
Thomas testified that he awoke sometime between 11:30 p.m. and 12 and observed the defendant in the bed with the two children. Jackson was talking to them.
Jackson was a friend of Larry Tanner's; the two had been fellow employees at Arrow Construction Company in Mobile, Alabama.
Thomas said he thought nothing of seeing Jackson in bed with the children and went back to sleep. Thomas further testified he woke up later and saw Jackson on top of the little girl Wendy, with his sex organ in his hand, trying to force it into the child. Thomas asked Jackson what he was doing, and got him off the child. Thomas then went into the other bedroom and awakened the parents. Thomas said Jackson was about to strike him when Larry Tanner told him he had better not. Then, uttering profanity, Jackson left. Jackson did not have a shirt on, and left his boots behind when he left.
Evon and Larry Tanner corroborated the testimony of Thomas. Mrs. Tanner said she saw the defendant coming out of the children's room trying to get his pants up, and his belt buckled.
The little girl was whining and shaking. Her panties were beside the bed, and Mrs. Tanner noticed blood on them.
The Tanners testified they did not know Jackson was in the house, that he had no permission to spend the night, and the front and back doors had been locked prior to the family's retiring that evening. While Jackson said he gained entrance through the back door, Mrs. Tanner said he could only have gained entrance through a window.
The parents were leaving with the little girl to take her to the hospital, but could not crank the pick-up because the wires had been disconnected.
Dr. Herbert Kinsey, a general practitioner, examined the child in the emergency room of the hospital in Lucedale at 1:50 a.m. July 16. He found a bruise on the left labia and an abrasion in the fold between the major and minor labia. There was a substance on Wendy's underclothing which appeared to be blood, consistent with the abrasion. The child was quite frightened. Dr. Kinsey was of the opinion that there had been an attempt to rape her, and the trauma to her had occurred within a matter of hours previous.
Dr. Kinsey delivered the panties, a tube with a swab and saline material, and a small glass container to Dr. Edwin C. Henson, a pathologist. The pathologist found no semen. While he made no test of it, he was of the opinion the panties had blood on them. The glass container had Caucasian pubic hair.
Jackson admitted to the sheriff that he was in bed with the children, but did nothing to the little girl.
On July 15, 1980, Jackson, who was born in 1951, was living with his mother about one mile from the Tanner residence. He testified that he had been with Larry Tanner that day, that he and Tanner were very *440 close friends, and that night he had simply come to the Tanner house to sleep a couple of hours.
Not surprisingly, the jury after a brief deliberation, returned a verdict of guilty. In the sentencing phase the jury sentenced Jackson to life imprisonment.

LAW
The pertinent portions of Miss. Code Ann. § 97-3-65(1) are as follows:
Every person eighteen (18) years of age or older who shall be convicted of rape by carnally and unlawfully knowing a female child under the age of twelve (12) years, upon conviction, shall be sentenced to death or imprisonment for life in the state penitentiary; .. . In all cases where the female child is under the age of twelve (12) years it shall not be necessary to prove penetration of the female's private parts where it is shown the private parts of the female have been lacerated or torn in the attempt to have carnal knowledge of her.
Jackson's first assignment of error that the statute is unconstitutional because it carries the death penalty is without merit. See: Upshaw v. State, 350 So.2d 1358 (Miss. 1977); Horton v. State, 374 So.2d 764 (Miss. 1979). If there were any basis to this contention, Jackson would have no cause to complain, because he escaped a death penalty verdict. See: Clark v. State, 169 Miss. 369, 384, 152 So. 820, 823 (1934).
Jackson's second argument is that the statute unconstitutionally discriminates against males. His principal authority is Tatro v. State, 372 So.2d 283 (Miss. 1979). In Tatro we examined this state's "fondling" statute, Miss. Code Ann. § 97-5-23, since amended. See Chapter 387, Mississippi Law 1980, Miss. Code Ann. § 97-5-23 (1980 Supplement). Tatro, a male, appealed from his conviction under the statute which then provided that any male person above the age of 18 years, who for the purpose of gratifying sexual lust, handled, touched or rubbed with his hands a child under the age of 14, would be guilty under the statute.
In that case we found women as capable of "fondling" under the terms of the statute as easily as men, and that there was no rational basis to exclude women from its proscription. Citing United States Supreme Court decisions which had struck laws discriminating against men: Orr v. Orr, 440 U.S. 268, 99 S.Ct. 1102, 59 L.Ed.2d 306 (1979); and Craig v. Boren, 429 U.S. 190, 97 S.Ct. 451, 50 L.Ed.2d 397 (1976), we held that Miss. Code Ann. § 97-5-23 (1972), then in effect, was unconstitutional. We held the statute denied equal protection of the laws to males.
Tatro has no application to this case. It is the victim, not the accused, who must be a female under the wording of the present statute under consideration. Furthermore, by the very nature of the crime, it is the male who must make the criminal assault in order to sustain a conviction. In this case, by force and violence, Jackson was attempting to rape this little girl when he was stopped. As opposed to the fondling statute, there is no rational basis to attempt to apply Miss. Code Ann. § 97-3-65 to any female accused. See: State v. Zaeringer, 280 N.W.2d 416 (Iowa 1979); State v. Craig, 169 Mont. 150, 545 P.2d 649 (1976); and State v. Sluder, 11 Wash. App. 8, 521 P.2d 971 (1974).
Jackson's final argument is that he was entitled to a directed verdict of acquital. The basis for this contention is that since there was no proof of penetration, it was incumbent upon the state to prove the child's private parts were "lacerated or torn" in the attempt by Jackson to have carnal knowledge.
We find the proof in this case supports penetration as well as a tearing of the child's private parts.
While it is the general law that in a rape case some penetration is required, only slight penetration of the private parts of the victim is required to constitute the offense. Jackson was seen on top of the child in the very act of committing the *441 rape. The doctor's testimony showed penetration to the extent of causing traumatic injury to the child's major and minor labias. This was sufficient penetration within the meaning of the statute. Horton v. State, 374 So.2d 764 (Miss. 1979); Lang v. State, 87 So.2d 265, 230 Miss. 147 (1956), cert. den. 352 U.S. 936, 77 S.Ct. 236, 1 L.Ed.2d 167, citing 75 C.J.S. Rape § 10b.
See also Thomas v. State, 53 Ala.App. 232, 298 So.2d 652 (1974), where there was found on the victim no bleeding but noted by the examining physician were abrasions to Labia Minora and surrounding tissue. The court held this proved there was penetration to some extent sufficient to prove rape. Cities 75 C.J.S. Rape § 10b. And Albritton v. State, 262 Ind. 452, 317 N.E.2d 854 (1974), where, in affirming a rape conviction, the court noted that medical examination of victim revealed, "considerable injury to the vulva and outer portion of the vagina", and from this evidence alone it was held not unreasonable for the jury to infer penetration.
In Williams v. State, 53 Fla. 84, 43 So. 431 (1907), the victim was six years old and a life sentence was sustained. The medical examination found a bruised condition to the child's private parts and the medical examiner, when asked, "`Was there entrance to the lips of the vagina?' He answered: `Yes, sir; to the lips but not the vagina itself.'" Quoting English law, "... I shall leave to the jury whether at any time any part of the virile member of the prisoner was within the labia of the pudendum of the prosecutrix; for if ever it was, no matter how little, that will be sufficient to constitute a penetration ..." Regina v. Lines, 1 Carr & K (47 E.C.L.) 393.
Other courts upholding rape convictions where slight penetration to vulva or labia is shown: Roberts v. Dutton, 368 F.2d 465 (CA5 Ga. 1966); Hice v. State, 268 Ark. 57, 593 S.W.2d 169 (1980); People v. Strickland, 134 Cal. App.2d 815, 286 P.2d 586 (1955); Bloodworth v. State, 216 Ga. 572, 118 S.E.2d 374 (1961); Long v. State, 84 Ga. App. 638, 66 S.E.2d 837 (1951); People v. Reynolds, 61 Ill. App.2d 349, 210 N.E.2d 637 (1965); People v. Schultz, 260 Ill. 35, 102 N.E. 1045 (1913); Trimble v. Commonwealth, 447 S.W.2d 348 (Ky. 1969); Moore v. State, 23 Md. App. 540, 329 A.2d 48 (1974); State v. Chaney, 184 Neb. 734, 171 N.W.2d 787 (1969); State v. Salazar, 74 N.M. 63, 390 P.2d 653 (1964); State v. Godwin, 51 N.M. 65, 178 P.2d 584 (1947); State v. Oliver, 78 N.D. 398, 49 N.W.2d 564 (1951); State v. Thomas, 248 S.C. 573, 151 S.E.2d 855 (1966); State v. McGrath, 46 S.D. 465, 193 N.W. 601 (1923); Sherbert v. State, 531 S.W.2d 636 (Tex.Cr.App. 1976); State v. Ray, 63 Wash.2d 224, 386 P.2d 423 (1963).
Moreover, the doctor found abrasions of the child's private parts of significant magnitude to cause bleeding. We find this sufficient to constitute a "tearing" within the meaning of the statute. Manifestly, one or more blood vessels in the private parts of this child were torn sufficiently to cause bleeding. See, Minor v. State, 396 So.2d 1031 (Miss. 1981). The fact that it was an abrasion type of trauma which tore the blood vessels and caused bleeding does not remove this case from the proscription of the statute.
AFFIRMED.
PATTERSON, C.J., WALKER and ROY NOBLE LEE, P. JJ., and BOWLING, DAN M. LEE, PRATHER, ROBERTSON and SULLIVAN, JJ., concur.