# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2016-KA-01442-COA

**DOUGLAS WALKER A/K/A DOUGLAS L. WALKER A/K/A DOUGLAS LAMAR WALKER**                                    APPELLANT

**v.**

**STATE OF MISSISSIPPI**                                    APPELLEE

| | |
|---|---|
| DATE OF JUDGMENT: | 08/20/2015 |
| TRIAL JUDGE: | HON. JOHNNIE E. WALLS JR. |
| COURT FROM WHICH APPEALED: | BOLIVAR COUNTY CIRCUIT COURT, SECOND JUDICIAL DISTRICT |
| ATTORNEY FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER BY: JUSTIN TAYLOR COOK |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: ALICIA MARIE AINSWORTH |
| DISTRICT ATTORNEY: | BRENDA FAY MITCHELL |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED: 06/19/2018 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**FAIR, J., FOR THE COURT:**

¶1.     Douglas Walker was convicted of one count of sexual battery and one count of fondling, both stemming from sexual contact with the eight-year-old daughter of his girlfriend.  On appeal, Walker contends that his convictions were not supported by substantial evidence and that his two convictions should be merged because one is a lesser-included offense of the other.  We find no merit to these contentions, and so we affirm Walker's convictions.

**FACTS**

¶2.     On September 22, 2012, eight-year-old "Amy"[1] had spent the day with her adult

stepsister, Leslie Horton.  As Horton pulled up to Amy's home to drop her off, Amy told

Horton that she did not want to leave the car until her mother came home because Walker,

her mother's live-in boyfriend, was there.  When Horton asked why, Amy told her that

Walker "puts his private inside of her and makes her go up and down."  Horton then called

Debbie Williams, Amy's aunt, and they met up.  Amy told Williams that Walker "touches

[her] and makes [her] go up and down on him"; she also said that "sometimes when her

mother was not at home [Walker] would touch her private areas."  Williams and Horton then

took Amy to the hospital and contacted the police.  Amy was later examined by Stacey

Carter, a nurse practitioner specializing in pediatric forensic medicine at the University of

Mississippi Medical Center.  Carter noted that Amy had redness on her labia majora, but her

examination was otherwise normal.  Amy also disclosed the abuse to Katrina Kennedy, a

forensic examiner, and a video recording of the interview was entered into evidence at the

trial.

**DISCUSSION**

1.     **Indictments**

¶3.     Walker contends that his indictments were "woefully inadequate and failed to satisfy

the notice requirements" of Rule 7.06 of the Uniform Rules of Circuit and County Court

---

[1] To protect the victim's privacy, we will refer to her by an alias.

Practice,[2] which at the time provided that "[t]he indictment upon which the defendant is to be tried shall be a plain, concise, and definite written statement of the essential facts constituting the offense charges and shall fully notify the defendant of the nature and cause of the accusation."

¶4. Count I of the indictment charged Walker with sexual battery in violation of Mississippi Code Annotated section 97-3-95(1) (Rev. 2014) and alleged that Walker "did unlawfully, wilfully, and feloniously engage in sexual penetration with [Amy], a female child under the age of fourteen (14) years, by inserting his penis and/or finger(s) and/or palm into her genital opening and/or vagina." Count II charged Walker with fondling, also known as molestation or gratification of lust, in violation of section 97-5-23(1) (Rev. 2014). It alleged that Walker "did unlawf[u]lly, wilfully, and feloniously, for the purpose of gratifying his lust or indulging his depraved licentious sexual desires, handle, touch or rub with his hands and/or penis, the vagina or genital area and/or buttock and/or back and body of [Amy], a female child under the age of sixteen (16)."

¶5. We must first note that Walker failed to object to the form of the indictment, and this issue is therefore waived on appeal. *Pustay v. State*, 221 So. 3d 320, 353 (¶109) (Miss. Ct. App. 2016). Nonetheless, we will address the merits of the issue.

¶6. The gist of Walker's complaint seems to be that the indictments were overly broad in

---

[2] Effective July 1, 2017, Rule 7.06 was replaced with Rule 14.1(a) of the Mississippi Rules of Criminal Procedure.

alleging the manner or means by which he violated the respective statutes; he complains about the number of "ors" and "and/ors" when describing what he touched or penetrated, and with what. But it is a well-established axiom of law that "where an indictment tracks the language of the statute, the indictment sufficiently puts the defendant on notice of the charges against him in order to prepare his defense." *Jenkins v. State*, 101 So. 3d 161, 165 (¶10) (Miss. Ct. App. 2012) (quoting *Hicks v. State*, 40 So. 3d 640, 642 (¶9) (Miss. Ct. App. 2010)). Thus, when an indictment tracks the language of the Mississippi Code, it complies with Rule 7.06. *See Graves v. State*, 216 So. 3d 1152, 1159 (¶12) (Miss. 2016). The indictment here tracks the statutory language for each offense, provides the time range and location of each offense, identifies the victim and the ages of the defendant and victim, and alleges that the acts were committed willfully, unlawfully, and feloniously. Therefore, we find that the indictment was sufficient.

¶7. Furthermore, "the ultimate test, when considering the validity of an indictment on appeal, is whether the defendant was prejudiced in the preparation of his defense." *Jones v. State*, 856 So. 2d 285, 289 (¶11) (Miss. 2003). Walker's defense at trial was that he never had inappropriate contact with Amy. Therefore, we cannot see how an indictment that specified several means or modes of committing the offenses prejudiced Walker in preparation of his defense. *See Tapper v. State*, 47 So. 3d 95, 102 (¶27) (Miss. 2010) ("The cold, hard facts are that, even if these young, immature girls had the ability to describe to the prosecutor in adult terms and in the most graphic detail the acts which they said Tapper

4

committed upon them, Tapper would not have been in any better position to prepare his defense 'that he didn't do it' . . . .").

¶8. Alternatively, Walker asserts that if this Court finds that he waived his right to assert this issue on appeal, then "such conduct would clearly be ineffective assistance of counsel." "In order to prevail on an ineffective-assistance-of-counsel claim, a defendant must prove that his attorney's performance was deficient, and that the deficiency was so substantial as to deprive the defendant of a fair trial." *Dartez v. State*, 177 So. 3d 420, 423 (¶19) (Miss. 2015). Walker cites no authority nor any proof to show how his trial attorney's performance deprived him of a fair trial. Additionally for the above reasons, the indictment was not defective. Thus, this issue is without merit.

### 2. Sufficiency of the Evidence

¶9. Next, Walker challenges the sufficiency of the evidence supporting his conviction for sexual battery. When reviewing the legal sufficiency of evidence, we consider all evidence in the light most favorable to the State. *Bush v. State*, 895 So. 2d 836, 843 (¶16) (Miss. 2005) (abrogated on other grounds by *Little v. State*, 233 So. 3d 288, 295 (Miss. 2017)). Credible evidence consistent with guilt must be accepted as true. *McClain v. State*, 625 So. 2d 774, 778 (Miss. 1993). The relevant inquiry is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Bush*, 895 So. 2d at 843 (¶16). Further, "[i]t is within the discretion of the jury to accept or reject testimony by a witness,

and the jury may give consideration to all inferences flowing from the testimony." *Johnson v. State*, 832 So. 2d 1263, 1265 (¶3) (Miss. Ct. App. 2002) (internal quotation mark omitted).

¶10.    Specifically, Walker claims that there is insufficient proof of penetration, which is an essential element of sexual battery. *See Johnson v. State*, 626 So. 2d 631, 632 (Miss. 1993). Sexual penetration has been statutorily defined to include "cunnilingus, fellatio, buggery or pederasty, any penetration of the genital or anal openings of another person's body by any part of a person's body, and insertion of any object into the genital or anal openings of another person's body." Miss. Code Ann. § 97-3-97(a) (Rev. 2014). "Slight penetration of the vulva or labia is sufficient to constitute penetration." *Ashford v. State*, 233 So. 3d 765, 778 (¶41) (Miss. 2017).

¶11.    The record reflects that the victim stated that Walker forced her to "go up and down" on him and that his penis was inside her when this occurred. Though hearsay, these accounts were admitted as substantive evidence and were sufficient to support the conviction. Walker points out that the victim was somewhat inconsistent in her forensic interview about whether Walker's penis was "inside" or "outside" of her, and she said it was "outside" in her testimony at trial. But inconsistent statements of a witness go to the weight of the evidence, not its sufficiency. *Jamison v. Barnes*, 8 So. 3d 238, 245 (¶17) (Miss. Ct. App. 2008). And it was for the jury to decide whether the child's recollection of the events at trial, years after the fact, was entitled to more or less weight than her more contemporaneous accounts. "[T]he jury is the sole judge of the credibility of witnesses, and the jury's decision based on

6

conflicting evidence will not be set aside where there is substantial and believable evidence supporting the verdict." *Nicholson v. State*, 523 So. 2d 68, 70 (Miss. 1988). On appeal, this Court is to view the evidence in the light most favorable to the verdict. *Bush*, 895 So. 2d at 843 (¶16).

¶12. Regardless, the emphasis on whether Walker's penis was "inside" or "outside" of the victim is misplaced. Under Mississippi law, sexual penetration is a term of art, and its legal definition does not require that the defendant's penis be inside the victim in the colloquial sense. Instead, sexual penetration requires only penetration of the labia, the fleshy folds of skin surrounding the entrance to the vagina, and that penetration need only be slight. *Jackson v. State*, 452 So. 2d 438, 440-41 (Miss. 1984). In other words, a defendant rubbing his penis between the labia of the victim is sexual penetration as our law defines it. In *Jackson*, the supreme court affirmed a conviction for rape based on evidence of abrasive injury to the labia; penetration could be inferred from the nature of the act that caused the abrasion. *Id.* Here, the victim stated that Walker forced her to "go up and down on him" while his "private" was "inside" her, or alternatively that Walker had pulled her underwear down, made her get on top of him, and "rubbed his private between her legs," although it was "outside" of her body. She also said Walker had put his penis "on top of her private." The medical examination corroborated her account, noting redness of the labia majora. A reasonable jury could find, beyond a reasonable doubt, that this contact included some slight penetration of the labia. That is all that is required to sustain the conviction for sexual

7

battery.

¶13.   We find the dissent's reliance on *Jenkins v. State*, 101 So. 3d 161 (Miss. Ct. App. 2012), to be misplaced.   In *Jenkins*, we held that "Jenkins putting his hand inside [the victim's] panties is not sufficient to constitute penetration."   *Id.* at 167 (¶17).   Our comment in *Jenkins* about what charges "typically result" from touching or rubbing was dictum, and it was addressed only to touching by the defendant's hand.   *See id.* at 167 (¶17).

¶14.   We conclude that the evidence was sufficient to support Walker's conviction of sexual battery.

### 3.      Merger of Counts

¶15.   Next, Walker contends that his convictions on Counts I and II violate the Double Jeopardy Clause of the United States Constitution.   For this proposition he cites *Friley v. State*, 879 So. 2d 1031 (Miss. 2004), where the Mississippi Supreme Court held that fondling can be a lesser-included offense of sexual battery.

¶16.   We employ the *Blockburger* test to determine whether a double-jeopardy violation has occurred; it asks "whether each offense contains an element not present in the other." *Watkins v. State*, 101 So. 3d 628, 532 (¶12) (Miss. 2012) (citing *Blockburger v. United States*, 284 U.S. 299, 304 (1932)).   But the *Blockburger* test is only applicable "where the same act or transaction constitutes a violation of two distinct statutory provisions." *Blockburger v. United States*, 284 U.S. 299, 304 (1932).   In reviewing the victim's testimony and statements admitted as substantive evidence, it is apparent that she described multiple

8

occurrences happening over a period of months. She described an act of sexual battery, which we have detailed above. But she also testified about other touchings that substantiate the molestation count, and these apparently occurred in entirely separate encounters. Amy testified that Walker would "touch [her] back, between [her] legs and on [her] stomach" with his hand, and that this happened more than once. She also confirmed that this happened a "different time" from when he touched her with his penis.

¶17. Since the two counts were substantiated by separate acts of the defendant, in this instance is irrelevant that fondling can be a lesser-included offense of sexual battery. Where "sufficient evidence exists to support separate and distinct acts of fondling and sexual battery, separate indictable charges can properly stand without implicating jeopardy issues." *Faulkner v. State*, 109 So. 3d 142, 148 (¶21) (Miss. Ct. App. 2013).

¶18. Finally, Walker contends, in a single sentence argument, that "the failure to specifically allege what acts constituted fondling for the purposes of Count II violated Walker's future double jeopardy protections under *Goforth v. State*, 70 So. 3d 174, 189 (Miss. 2011)." But *Goforth* is simply inapposite: it concerned "multiple, identically worded counts in the indictment," where the defendant had been convicted of some of the identical counts and acquitted of the others. *Id.* at 189 (¶69). The supreme court reversed the convictions on other grounds, and the issue was whether double jeopardy prohibited retrial on any of the counts—the court held that it did, since it had no way to identify what Goforth had already been acquitted of. *See id.* In Walker's case, the counts were not identically

worded, Walker was not acquitted of any of them, and he is not going to be retried. There is no "future double jeopardy" issue because Walker cannot be prosecuted again for the same offenses during the time frame specified in the indictment. *See Bateman v. State*, 125 So. 3d 616, 627-28 (¶¶36-37) (Miss. 2013).

¶19. We find no merit to this issue.

### 4.    Ineffective Assistance of Counsel

¶20. Finally, Walker seeks to reserve all ineffective assistance of counsel claims that are not apparent from the record for post-conviction collateral relief. This is entirely unnecessary to preserve the claims, as issues which are not fully apparent from the record *cannot* be raised on direct appeal and are not waived by failure to do so. *See* M.R.A.P. 22(b). Still, this Court cannot reserve post-conviction claims for Walker; since he has appealed his conviction, he must petition the Mississippi Supreme Court for leave to file a post-conviction-relief motion. *See* Miss. Code Ann. § 99-39-7 (Rev. 2015). This may only be done after post-conviction issues outside the record, if they exist, are found, and a proposed motion is executed and submitted to the supreme court. *See* Miss. Code Ann. § 99-39-27 (Rev. 2015). On direct appeal, this Court can only deny relief without prejudice to a future post-conviction claim. *See Johnson v. State*, 236 So. 3d 835, 839-40 (¶16) (Miss. Ct. App. 2017).

¶21. **AFFIRMED.**

**LEE, C.J., GRIFFIS, P.J., BARNES, WILSON, WESTBROOKS AND TINDELL, JJ., CONCUR. GREENLEE, J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION, JOINED BY IRVING, P.J., AND CARLTON, J.**

10

**GREENLEE, J., CONCURRING IN PART AND DISSENTING IN PART:**

¶22.    I would reverse and render on Walker's conviction for Count I, sexual battery, finding the evidence insufficient to support the jury's verdict. I concur with the majority upholding the conviction of fondling and concur with the remainder of the majority opinion.

## FACTS AND PROCEDURAL HISTORY

¶23.    As I would reverse and render the conviction for sexual battery, a further factual assessment is in order. On September 22, 2012, eight-year-old Amy[3] had spent the day with her adult stepsister, Leslie Horton. As Horton pulled up to Amy's home to drop her off, Amy told Horton that she did not want to get out of the car and wanted to wait for her mother to arrive at the home because Walker, her mother's live-in boyfriend, was there. Horton asked why Amy did not want to go inside. According to Horton, Amy told her that Walker "puts his private inside of her and makes her go up and down." Horton then called Debbie Williams, Amy's aunt, and they all met at a nearby restaurant.

¶24.    Upon arrival, Williams asked Amy why she did not want to go home, and Amy replied that she did not want to because her mother was not there. According to Williams, Amy further explained that she did not want to go home because Walker "touches [her] and makes [her] go up and down on him." After hearing this, Williams decided to take Amy to Bolivar County Medical Center and have her examined. According to Williams, on the ride to the

---

[3] The Court of Appeals declines to identify sexual-assault victims. To protect the victim's privacy, her name has been substituted with an alias.

hospital, Amy told her that "sometimes when her mother was not at home [Walker] would touch her private areas." While at the hospital, the medical staff examined Amy and the Cleveland Police Department was called.

¶25. Shortly after her examination at Bolivar County Medical Center, Amy was examined by Stacey Carter, a nurse practitioner specializing in pediatric forensic medicine at the University of Mississippi Medical Center. Carter noted that Amy had redness on her labia majora but that her examination results were otherwise normal. Additionally, on October 2, 2012, Amy was taken for a video-recorded forensic interview performed by Katrina Kennedy.

¶26. From June 8 to 11, 2015, a jury trial was held before the circuit court. During this trial, the State's first witness was Horton, who testified that Amy told her the reason she did want to be dropped off at home was that Walker was home and he made her "go up and down when I don't want to." Horton further testified that Amy told her that "[Walker] puts his privates inside of her and makes her go up and down." Additionally, Williams, Amy's aunt, testified that Amy told her that "[Walker] touches her and makes her go up and down."

¶27. Amy, who was eleven at the time, also testified on behalf of the State at trial. During her testimony, Amy repeatedly stated that Walker touched her back, hands, between her legs and up around her stomach on numerous occasions. She further explained that she had underwear on when Walker would touch her but "one time [Walker] took his private out" and "pulled [her] underwear down," telling her "to lay on top of him." Amy testified that, then

12

Walker would "rub his private between [her] legs," but when asked if Walker's private was inside her body, she stated "on the outside."

¶28.    Additionally, the jury watched the October 2, 2012 video-recorded forensic interview between Amy and Kennedy. In this recording, Amy stated several times that Walker put his private in her. However, she then explained that this occurred while her clothes were on. When Kennedy asked Amy to explain if Walker's private was "in [her], was it on top of [her] skin, or something else," Amy replied "on top of it." Further, when asked for clarification later in the recording, Amy explained that Walker's private was on top of her private. Additionally, when asked about the conversation with her step-sister, Amy explained that she told Horton that she did not want to go inside her mother's home because Walker "touches her privates."

**DISCUSSION**

¶29.    Walker asserts that the circuit court erred in not granting his motion for a judgment notwithstanding the verdict because there was insufficient evidence to support his conviction for count one, sexual battery. Specifically, he asserts that there is no evidence of "penetration" which is an essential element of sexual battery. Conversely, the State urges that viewing the evidence in a light most favorable to the State, there was sufficient evidence of penetration that could be inferred beyond a reasonable doubt. The State argues that it was reasonable for the jury to infer penetration from the video-recorded forensic interview combined with the testimony of Amy's step-sister and aunt. However, after reviewing the

13

evidence in the light most favorable to the prosecution, a rational juror could not have found that Walker penetrated Amy as required for a sexual battery conviction. This rationale is especially true when considering Amy's ample testimony, and considering the evidence of penetration is hearsay from her appropriately supportive family.

¶30.    Sexual penetration in Mississippi has been statutorily defined to include "cunnilingus, fellatio, buggery[,] or pederasty, any penetration of the genital or anal openings of another person's body by any part of a person's body, and insertion of any object into the genital or anal openings of another person's body." Miss. Code. Ann. § 97-3-97(a) (Rev. 2014). Further, Mississippi precedent has established that "[p]enetration is the very essence of the crime of sexual battery." *Ringer v. State*, 203 So. 3d 794, 796 (¶3) (Miss Ct. App. 2016) (quoting *Johnson v. State*, 626 So. 2d 631, 632 (Miss. 1993)). Additionally,"[p]enetration, however slight, is sufficient to establish the penetration element of sexual battery." *Burrows v. State*, 961 So. 2d 701, 706 (¶17) (Miss. 2007).

¶31.    In *Jenkins v. State*, 101 So. 3d 161 (Miss. Ct. App. 2012), this Court faced a similar situation.  In *Jenkins*, the circuit court convicted Jenkins of two counts of sexual battery and two counts of fondling. *Id.* at 163 (¶1). This Court reversed one count of sexual battery, finding there was insufficient evidence to establish, beyond a reasonable doubt, that penetration occurred on the date alleged in the indictment. *Id.* at 168 (¶20). The Court noted that "[t]ypically, in Mississippi, incidents where a defendant merely has . . . rubbed on the victim's vaginal area, without any testimony that the hand or finger entered inside, have

14

resulted in the charge of fondling, not sexual battery." *Id.* at 167 (¶17). Therefore, the Court reasoned that the victim's testimony—that Jenkins put his hand inside her panties, on "the top part" of her genitals, and "just on the outside" of her genitals—was insufficient to establish that penetration occurred. *Id.* at 168 (¶20).

¶32. Similarly, in the present case, there is insufficient evidence of penetration. Horton did testify that Amy told her that Walker "puts his private inside of her and makes her go up and down." However, Williams's testimony did not indicate penetration occurred. According to Williams, Amy said she did not want to be with Walker "because he touches and makes me go up and down on him." Even Amy's testimony refutes evidence of penetration. During Amy's direct testimony she did not indicate that any penetration occurred, only stating that Walker's private was "on the outside" of her body. Further, in the video-recorded forensic interview, Amy explained that she told Horton she did not want to go inside the home because Walker "touches her privates."

¶33. In the forensic interview, although Amy stated Walker's private was inside her body on occasion, she consistently stated that Walker's private was "on the outside" and that during the alleged episode of sexual battery, her clothes were on. Moreover, during the interview, Kennedy specifically asked Amy, "Did you say he put his private on you or in you? What did you say?" Amy responded, "On me." Such was consistent with her direct testimony at trial and contradicted Horton's testimony.

¶34. Accordingly, there was insufficient evidence of penetration. Therefore, the circuit

15

court's judgment of conviction for count one, sexual battery, should be reversed and rendered.

**IRVING, P.J., AND CARLTON, J., JOIN THIS OPINION.**