(No. 7190. February 15, 1945.)

ERNEST STEWART, Plaintiff and Respondent, v. COMMON SCHOOL DISTRICT NO. 17 OF OWYHEE COUNTY, IDAHO, and GEM HIGHWAY DISTRICT NO. 3, sometimes known as Road District No. 3, Interveners and Appellants.

[156 Pac. (2d) 194.]

Laurence N. Smith and John D. Ewing for interveners and appellants.

Geo. H. van de Steeg for respondent.

Milo Axelson, Prosecuting Attorney, for Owyhee County.

HOLDEN, J.—This suit was commenced February 22, 1943 against O. F. Brunzell, as Assessor of Owyhee County and the County of Owyhee, a body corporate, to cancel and set aside an assessment and tax levied in pursuance thereof. Thereafter the demurrer of the defendants to respondent's complaint was argued and overruled, and the Assessor and the County having failed to answer within the time granted by the court their default was duly and regularly entered.

October 11, 1943, Common School District No. 17 and Gem Highway District No. 3 filed a petition for leave to intervene in the cancellation suit. October 11, 1943, an

order was entered granting leave to intervene. October 11, 1943, the interveners answered the complaint. The cause was tried November 8, 1943. Thereafter the trial court made and entered findings of fact and conclusions of law. We quote the conclusions of law pertinent to this appeal:

"That the value of plaintiff's equity in said lands as determined by the assessor and equalized by the county commissioners is unauthorized by law, erroneous and excessive; that said defendants are required by law and are hereby directed —— fix and determine such value by ascertaining the proportion or percentage of plaintiff's ownership based upon the amount paid on the land sale certificate and the total purchase price therein specified; that on that basis the plaintiff has paid 21.3% of the purchase price and is the owner of a 21.3% equity in said lands; that the determination of said defendants that the full cash value of the lands for purposes of taxation was the sum of $1440.00 should be and hereby is accepted and approved; that 21.3% of said sum of $1440.00, or the sum of $306.72, is the value that said defendants should have and hereby are required to determine as the value of plaintiff's said equity in said lands; that the taxes due and payable from plaintiff for the year 1942 must be computed upon said valuation of $306.72; that so computed the amount of such taxes due from the plaintiff for the year 1942, including the taxes on the improvements on said lands and on plaintiff's personal property, are the sum of $29.42; that the plaintiff having paid to defendants, but under the protest, the sum of $74.91 is entitled to recover back from the defendants the difference, or the sum of $45.49."

November 9, 1943, judgment was rendered and entered in accordance with the findings of fact and conclusions of law made and entered, as aforesaid, from which the interveners prosecuted an appeal to this court.

To quote appellants "the only point on this appeal is the construction of certain statutes of the State of Idaho which control the assessment of lands sold by the State of Idaho under contract of sale." The sections referred to by appellants are sec. 56-320, I.C.A. and sec. 61-1123, I.C.A., as amended by the 1941 Session of the Legislature (S. L. 1941, pp. 158, 159).

Sec. 56-320, I.C.A., provided:

[56-320]. "Lands exempt from taxation. All lands sold under the provisions of this chapter shall be exempt from taxation for and during the period of time in which the title to said land is vested in the state of Idaho, but the value of the interest therein of the purchaser may be taxed, which interest shall be determined by the amount paid on such land and the amount invested in improvements thereon at the date of such assessment."

Sec. 61-1123, I.C.A., provided:

[61-1123]. "Assessment of equities in state lands.—Equities in state land shall be assessed at that proportion of the full cash value of the land which the amount paid thereon bears to the total amount of the purchase-price. Refusal to pay the tax levied upon any equity in state land by the owner upon demand by the tax collector shall operate as forfeiture of such equity. Any such refusal shall be reported to the state board of land commissioners by the tax collector and the said board shall thereupon declare such forfeiture and the certificate and contract relating thereto annulled in the same manner as in the case of failure of a purchaser of state land to make any of the payments stipulated and provided in section 56-316."

Sec. 56-320, supra, as amended, provides:

[56-320]. "LANDS EXEMPT FROM TAXATION.—All lands sold under the provisions of this chapter shall be exempt from taxation for and during the period of time in which the title to said land is vested in the State of Idaho, but the value of the interest therein of the purchaser * *shall* be taxed, which interest shall be * * * * *assessed for purposes of taxation as other property is assessed and the* improvements thereon * * * *shall also be taxed."*

And sec. 61-1123, as amended, provides:

[61-1123]. "ASSESSMENT OF EQUITIES IN STATE LANDS.—Equities in state land shall be assessed at * * * * *their* full cash value * * * * *as other property is assessed.* Refusal to pay the tax levied upon any equity in state land by the owner upon demand by the tax collector shall operate as forfeiture of such equity. Any such refusal shall be

reported to the state board of land commissioners by the tax collector and the said board shall thereupon declare such forfeiture and the certificate and contract relating thereto annulled in the same manner as in the case of failure of a purchaser of state land to make any of the payments stipulated and provided in sec. 56-316*, *as amended.*"

It will be noted sec. 56-320, I.C.A., expressly exempted state lands from taxation during the period the title to the land was vested in the State of Idaho, but provided, nevertheless, the *value* of the *interest* of a purchaser of state lands should be taxed, and that such interest "shall be determined by the amount paid on such land and the amount invested in improvements thereon at the date of such assessment." It will also be noted the legislature in amending sec. 56-320, supra, retained the provision expressly exempting lands sold by the state from taxation during the period the title to the land was vested in the state, and that the amendment also retained the provision that the *value* of the *interest* of the purchaser should be taxed. It will be further noted that while the legislature, in amending that section, expressly struck therefrom the provision which provided exactly *how* the *interest* of a purchaser of state land should be determined, for the purpose of taxation, it did not provide any other or different method. It simply provided the interest of a purchaser of state land "shall be * * * assessed for purposes of taxation as other property is assessed * * *" And it will be observed the legislature in amending sec. 61-1123, I.C.A., struck from that section that part which provided an *equity* in state lands should be assessed at "that proportion of the cash value of the land which the amount paid thereon bears to the total amount of the purchase price," and then and without providing any other or different method of determining how the equity of a purchaser of state land should be *determined* for the purpose of assessment and taxation, provided that "Equities in state land shall be assessed at . . . . their full cash value . . . . as other property is assessed."

Appellants "contend that the proper method of assessment under the statutes (secs. 56-320 and 61-1123, as amended) is to deduct from the fair market value or full cash value the amount left unpaid on the contract; and that should be the actual assessed valuation." But that method would violate sec. 61-1123, supra, as amended, in that it

expressly provides (as did that section before amendment) that it is the *equity* of a purchaser of state land which *shall be assessed,* not the difference between the cash value of the land and the amount left unpaid on the contract, and that such *equity* shall be assessed at its "full cash value . . . . as other property is assessed." It is clear that section, as amended, does not provide *how* the *equity* of a purchaser shall be determined, but merely that his equity, whatever it is, shall be, as just pointed out, assessed at its "full cash value . . . . as other property is assessed," nor does sec. 61-1123, as amended, provide that the purchaser's equity, for the purpose of taxation, shall be determined by deducting from the full cash value of the land "the amount left unpaid on the contract." Moreover, just what would happen if, during some great slump in land values (such as we have experienced in the past), the balance due on a contract (made during a "boom", and we have experienced "booms" in land, as well as slumps), amounted to more than the current cash value of the land? The purchaser's equity would, of course, under such circumstances, escape taxation. This, we think, further demonstrates a lack of merit in appellants' contention.

██ It is quite true, however, as argued by appellants and held by this court (*Moody v. State Highway Dept.,* 56 Ida. 21, 25, 48 P. (2d) 1108 and *Anderson v. Rayner,* 60 Ida. 706, 713, 96 P. (2d) 244), it will be presumed that by striking the above quoted provisions from sec. 56-320, I.C.A., and sec. 61-1123, I.C.A., the legislature *intended,* for instance, to make a change in the method of determining *how* the *interest* of a purchaser of state land should be determined for the purpose of taxation. That will be conceded. But is an *intention* to make a change, without actually making it, sufficient? Or must any intended change be made in express language? This identical question was before this court in *Holmberg v. Jones,* 7 Ida. 752, 759, 65 P. 563. In that case, it appears the legislature apparently *intended* to create a new county to-wit, Clearwater County. Section 1 of the act provided:

" 'That all that portion of the state of Idaho included within the following boundaries, to-wit: Beginning at the southeast corner of Kootenai county on the watershed separating the waters of the St. Mary and Clearwater rivers; thence in an easterly direction, . . . . to the place of be-

ginning.' Sections 2 and 3' declare that all that portion of
Shoshone and Nez Perces counties, respectively, 'not em-
braced within the boundaries of the county of Clearwater
as described in section 1 of this act,' shall hereafter consti-
tute the counties of Shoshone and Nez Perces, respectively.
Section 4 provides that 'the governor of the state of Idaho
is hereby authorized and directed within thirty days after
the establishment of the county of Clearwater, by act of
the legislature of the state of Idaho, to appoint for the
county of Clearwater the following officers, to-wit'. Sec-
tion 5 provides that 'the county seat of said county of Clear-
water shall be after the establishment of the county, lo-
cated at the present town of Oro Fino.' In sections 6, 7
and 10, the phrase, 'after the establishment of Clearwater
county,' is used. There is no declaration anywhere in the
act that the territory described in the first section shall
constitute or be the county of Clearwater. It might be
inferred from the language of the second and third sec-
tions that it was the intention of the legislature to create,
by the passage of this act, the county of Clearwater, yet
other language in the act, especially the phrase, 'after the
establishment of the county of Clearwater,' followed imme-
diately by the phrase, 'by act of the legislature of the state
of Idaho,' found in section 4 of the act, negatives the idea
that the legislature intended to create a county by the pas-
sage of this act, and lends color to the idea that it intended
to pass another act creating or 'establishing' the 'county of
Clearwater.' But, be this as it may, can the legislature,
by mere intendment, by implication, without any express
declaration, lop off from certain counties specified terri-
tory, and create out of such territory a new county? Unless
this may be done, the act in question fails to create the
county of Clearwater, and no such county has been estab-
lished. It is true that a reading of the entire act shows
that the legislature intended that a county to be known as
the 'County of Clearwater' should be established out of the
territory described in the first section of the act, but as to
whether it intended to establish such county by the act in
question is extremely doubtful, as is shown by the quota-
tions hereinbefore made. Be this as it may, and let it be
regarded as beyond question that the legislature intended
to create the county of Clearwater, it is evident that it did
not do so. Can the court take a lifeless body and breathe
into it life? Can the court take an act which does not create

a county, and by interpolation create a county, because it is apparent that the legislature intended to create one? This would give the court more power over legislation than it possesses over ordinary contracts between private parties, and would impinge upon the power vested solely in the legislature by the constitution. This court does not feel that it has authority to create a county. It is of the opinion that the act in question falls far short of creating or establishing the so-called 'County of Clearwater.' The creation of new counties, which means division and elimination of old counties, is a matter of too much importance to public interests to be done purely by intendment or implication. We are cited to no statute similar to the one in question here. We are cited to no instance in which a court has taken a similar statute and held that it created a county. As to how far a court may or may not go in helping out legislative enactments by eliminations and interpolations—judicial amendments—the authorities are somewhat conflicting. We are of opinion, however, that both by authority and principle, the court cannot do that which the legislature perhaps intended to do, but wholly failed to do." (See also 59 C.J., sec. 576, p. 974; Black on Interpretation of Laws (Sec. Ed.), p. 80.)

As pointed out in *Holmberg v. Jones,* supra, we cannot "take a lifeless body and breathe into it life" "because it is apparent that the legislature intended to," as in the case at bar, make a change in the method of determining the value of the interest of a purchaser of state land for the purpose of taxation—this court cannot do what the legislature may well have intended to do, but failed to do. In other words, we cannot legislate. That is the sole province of the legislature.

■ In conclusion: The legislature in amending sections 56-320 and 61-1123, supra, having failed to provide a new or different method of determining, for the purpose of taxation, the value of the equity of a purchaser of state land, than that already provided by statute, the trial court properly directed:

"that said defendants are required by law and are hereby directed (to) fix and determine such value by ascertaining the proportion or percentage of plaintiff's ownership based upon the amount paid on the land sale certificate and the

total purchase price therein specified; that on that basis the plaintiff has paid 21.3% of the purchase price and is the owner of a 21.3% equity in said lands; that the determination of said defendants that the full cash value of the lands for purposes of taxation was the sum of $1440.00 should be and hereby is accepted and approved; that 21.3% of said sum of $1440.00, or the sum of $306.72, is the value that said defendants should have and hereby are required to determine as the value of plaintiff's said equity in said lands; that the taxes due and payable from plaintiff for the year 1942 must be computed upon said valuation of $306.72; that so computed the amount of such taxes due from the plaintiff for the year 1942, including the taxes on the improvements on said lands and on plaintiff's personal property, are the sum of $29.42; that the plaintiff having paid to defendants, but under the protest, the sum of $74.91 is entitled to recover back from the defendants the difference, or the sum of $45.49."

It will be noticed the trial court directed that the full cash value of respondent's equity in the land be determined by ascertaining the proportion or percentage of respondent's ownership "based upon the amount paid on the land sale certificate and the total purchase price." There is some contention to the effect that that method of determination is erroneous because it is argued it makes the contract purchase price ($1228.56), not full cash value, the basis of assessment, in violation of sec. 61-102, I.C.A., which requires that all property, both real and personal, be assessed at its full cash value. While it is true sec. 61-102, supra, requires that all property be assessed at its full cash value, it is not true, if I understand the trial court correctly, that it substituted the contract purchase price for full cash value. What the trial court did was this: It directed that the contract purchase price be employed for the sole and only purpose of "ascertaining the proportion or percentage" of respondent's equity in the land. And "that on that basis, the plaintiff (respondent) has paid 21.3% of the purchase price and is the owner of a 21.3% equity in said lands (having paid $261.11 on the purchase price of $1228.56); that the determination of said defendants that the full cash value of the lands for the purpose of taxation was the sum of $1440.00 should be and hereby is accepted and approved; that 21.3% of said sum of $1440.00, or the sum of $306.72, is the (full cash) value that said defendants should have

and hereby are required to determine as the (full cash) value of plaintiff's said equity in said lands." In other words, the trial court directed that respondent's equity be assessed, just as all other property is assessed, at its full cash value, which is what the statute still in force, as hereinbefore pointed out, requires. Furthermore, the trial court followed the clear mandate of the statute (sec. 61-1123, I.C.A.), which requires that "equities in state land *shall be assessed at that proportion of the full cash value of the land which the amount paid thereon bears to the total amount of the purchase price."* (Emphasis ours). And that is exactly what the trial court ordered and directed.

It follows the judgment must be affirmed, and it is so ordered, with costs to respondent.

Ailshie, C.J., concurs in affirmance of the judgment.

GIVENS, J., Special Concurrence.—The general rule as indicated by Holden, J., that a change in phraseology of a statute indicates changed legislative intent, is undoubtedly generally correct. However, in the present case, it might well be that the legislature intended, instead of a complete change, since the asserted former method was not as pointed out by Holden, J., proscribed, to emphasize that the *value* of the purchaser's interest as related to assessment of other property was to be the controlling factor as to assessment thereof, not that that value should be entirely disassociated from the proportionate amount paid on the purchase price. In any event, the original statute, or as amended, will not support appellants' theory, but does support the method outlined by the learned trial judge in this conclusion of law and direction quoted by Holden, J.

Therefore, I concur in affirming the judgment approving this method.

BUDGE, J., Dissenting.—In my opinion respondent's equity in the land purchased by him under contract from the State is the amount paid on the contract as evidenced by the land sale certificate, which equity, together with all improvements placed on the land (including his personal property subject to assessment) constitute his taxable property.

Section 4, art. 7 of the Constitution exempts from taxation property of the state.

Lands purchased under contract from the State remain the property of the State until fully paid for, and are exempt from taxation under the provisions of sec. 4, art. 7, supra.

The cause should be remanded to the trial court with instructions to amend its judgment by fixing the assessed value of respondent's equity for taxation purposes as the amount actually paid on the land sales contract.

I am authorized to say that Miller, J., concurs in this dissent.