653 P.2d 441

**Robert William MURPHEY,**
**Plaintiff-Appellant,**

v.

**Myrna Grace MURPHEY,**
**Defendant-Respondent.**

No. 13374.

Supreme Court of Idaho.

Oct. 21, 1982.

Leon R. Weeks (deceased), Nampa, for plaintiff-appellant.

Richard B. Eismann, Homedale, for defendant-respondent.

BISTLINE, Justice.

This is an appeal from an award of alimony and attorney's fees in a divorce proceeding. The plaintiff-appellant Robert Murphey challenges on appeal, as he did below, the constitutionality of the statute under which alimony was awarded, former I.C. § 32–706, since repealed, to wives only. He also challenges the award of attorney's fees to his wife under the provisions of former I.C. § 32–704, since repealed, which provided for awards of attorney's fees in divorce proceedings to wives only.

I.

The appellant's contention that the classification established by former § 32–706 discriminates on the basis of sex in violation of the equal protection clauses of the United States Constitution, U.S. Const. amend. XIV § 1,[1] and the Idaho Constitution, Id. Const. art. I § 2,[2] is correct. I.C. § 32–706 provided at the time in question[3] that:

"Alimony for fault of husband.—Where a divorce is granted for an offense of the husband, including a divorce granted upon the husband's complaint, based upon separation without cohabitation for five (5) years, the court may compel him to provide for the maintenance of the chil-

1. The equal protection clause of the Fourteenth Amendment of the Federal Constitution provides: "No state shall make or enforce any law which shall ... deny to any person within its jurisdiction the equal protection of the laws." U.S.Const. amend. XIV § 1.

2. Id. Const. art. I, § 2 provides:
"Political power inherent in the people.— All political power is inherent in the people. Government is instituted for their equal protection and benefit, and they have the right to alter, reform or abolish the same whenever they may deem it necessary; and no special privileges or immunities shall ever be granted that may not be altered, revoked, or repealed by the legislature."

3. Alimony awards are now governed by I.C. § 32–705, which provides:
"Maintenance.—1. Where a divorce is granted, for an offense of either spouse, including a divorce granted upon the complaint of the party at fault, the court may grant a maintenance order for the innocent spouse if it finds that the innocent spouse seeking maintenance:

(a) Lacks sufficient property to provide for his or her reasonable needs; and
(b) Is unable to support himself or herself through employment.
2. The maintenance order shall be in such amounts and for such periods of time the court deems just, after considering all relevant factors which may include:
(a) The financial resources of the spouse seeking maintenance, including the marital property apportioned to said spouse, and said spouse's ability to meet his or her needs independently;
(b) The time necessary to acquire sufficient education and training to enable the spouse seeking maintenance to find employment;
(c) The duration of the marriage;
(d) The age and the physical and emotional condition of the spouse seeking maintenance;
(e) The ability of the spouse from whom maintenance is sought to meet his or her needs while meeting those of the spouse seeking maintenance;
(f) The tax consequences to each spouse.

dren of the marriage, and to make such suitable allowance to the wife for her support as the court may deem just, having regard to the circumstances of the parties respectively; and the court may, from time to time, modify its orders in these respects."

In 1979 the U.S. Supreme Court decided *Orr v. Orr,* 440 U.S. 268, 99 S.Ct. 1102, 59 L.Ed.2d 306 (1979). The Alabama statutes challenged in *Orr,* like our former alimony statute, allowed awards of alimony to the wife only. *Id.* at 270 n. 1, 99 S.Ct. at 1107 n. 1. The *Orr* court applied the substantial relationship standard of review [4] to the Alabama statute. The Court described this standard and why it was to be applied in the following matter:

"In authorizing the imposition of alimony obligations on husbands, but not on wives, the Alabama statutory scheme 'provides that different treatment be accorded ... on the basis of ... sex; it thus establishes a classification subject to scrutiny under the Equal Protection Clause,' *Reed v. Reed,* 404 U.S. 71, 75 [92 S.Ct. 251, 253, 30 L.Ed.2d 225] (1971). The fact that the classification expressly discriminates against men rather than women does not protect it from scrutiny. *Craig v. Boren,* 429 U.S. 190 [97 S.Ct. 451, 50 L.Ed.2d 397] (1976). 'To withstand scrutiny' under the Equal Protection Clause, ' "classifications by gender must serve important governmental objectives and must be substantially related to achievement of those objectives." ' *Califano v. Webster,* 430 U.S. 313, 316–317 [97 S.Ct. 1192, 1194–1195, 51 L.Ed.2d 360] (1977)." 440 U.S. at 278–79, 99 S.Ct. at 1111.

After examining the objectives of the Alabama alimony statute, the Court concluded that providing alimony for needy wives, but not needy husbands, was not substantially related to achievement of any of those objectives. While alimony itself serves useful purposes, the *Orr* Court did

not believe that the gender-based classification was at all necessary to effectuate those purposes. It thus reversed the Alabama Supreme Court's affirmance of the alimony award and remanded, stating that "[this] disposition, of course, leaves the state courts free to decide any questions of substantive state law not yet passed upon in this litigation." 440 U.S. at 283, 99 S.Ct. at 1114.

■ *Orr* is dispositive of the issue of whether former I.C. § 32–706 violates the equal protection clause of the United States Constitution. While alimony serves a number of laudable purposes, as we discuss in part II, *infra,* there is no discernible relationship between those purposes and the creation of a gender-based classification for determining who receives the benefits of alimony. The goals of the alimony statute would be fulfilled as much by a statute which extends benefits to both needy wives and needy husbands as by a statute which extends benefits to needy wives only. As the Court in *Orr* put it:

"Legislative classifications which distribute benefits and burdens on the basis of gender carry the inherent risk of reinforcing stereotypes about the 'proper place' of women and their need for special protection. Cf. *United Jewish Organizations v. Carey,* 430 U.S. 144, 173–174 [97 S.Ct. 996, 1013–1014, 51 L.Ed.2d 229] (1977) (opinion concurring in part). Thus, even statutes purportedly designed to compensate for and ameliorate the effects of past discrimination must be carefully tailored. Where, as here, the State's compensatory and ameliorative purposes are as well served by a gender-neutral classification as one that gender classifies and therefore carries with it the baggage of sexual stereotypes, the State cannot be permitted to classify on the basis of sex. And this is doubly so where the choice made by the State appears to redound—if only indirectly—to the benefit of those without need for special solic-

---

4. We recognized and applied this standard of review in *Jones v. State Board of Medicine,* 97 Idaho 859, 555 P.2d 399 (1976).

itude." 440 U.S. at 283, 99 S.Ct. at 1113–14.

Classifications which perpetuate or encourage sexual stereotypes necessarily burden those persons—of either gender—whose social and economic preferences or conditions do not conform to the stereotypical model. To allow the state to create such classifications, at least in the absence of a substantial relationship between the classifications and an otherwise valid state goal, would be abhorrent to art. I, § 2 of the Idaho Constitution. We therefore hold that former I.C. § 32–706 violates the equal protection clauses of both the Idaho Constitution and the United States Constitution.

## II.

Having arrived at the relatively easy conclusion that a statute which allows awards of alimony only to women is not constitutional, we turn to the more difficult task of deciding whether that decision should be applied retroactively, *i.e.,* to declare the statute to have been at all times void and of no effect, or to extend its construction so as to make the statute constitutional. As we noted in *Harrigfeld v. District Court,* 95 Idaho 540, 545, 511 P.2d 822, 827 (1973), "[a] holding that a statutory classification scheme constitutes a denial of equal protection because it unconstitutionally grants a benefit to one class while denying it to another, does not necessarily mandate a denial of the benefit to both classes." In deciding whether to construe the statute as neutrally extending the benefits of alimony, we should interpolate that which we believe that the legislature would have intended had it realized that the alimony statute as drafted might somehow transgress constitutional boundaries.

By the plain language of I.C. § 32–706, the purpose of alimony is to provide "support" for the wife. While it is true that under this statute alimony could only be granted when the husband, rather than the wife, was the offending party, this was not intended as a *punishment* for every offending husband. The purpose of this statute was to provide for the *needs* of the wife if the divorce was not occasioned through her fault. As this Court stated in *Jackson v. Jackson,* 87 Idaho 330, 334, 393 P.2d 28, 30 (1964), "Alimony . . . is designed solely for the support of the wife." *Cf. Nielsen v. Nielsen,* 87 Idaho 578, 394 P.2d 625 (1964) (error to limit alimony to one year when wife's need for alimony might extend beyond one year); *Shepard v. Shepard,* 94 Idaho 734, 497 P.2d 321 (1972) (in awarding alimony, due consideration should be given to the correlative needs and abilities of both parties). " 'Alimony,' which signifies literally nourishment or sustenance, is an allowance for support and maintenance, or, as has been said, a substitute for marital support." 24 Am.Jur.2d, Divorce and Separation § 514 at 640–41 (1966) (footnotes omitted). *See generally Olsen v. Olsen,* 98 Idaho 10, 14–22, 557 P.2d 604, 608–616 (Shepard, J., dissenting).

It is apparent that the legislature would have intended that the benefits of the alimony statute should be extended to the excluded class, rather than taken from the benefitted class, and we should therefore extend those benefits in order that the legislative will, albeit not gifted with omniscience, should be carried out.

"If an important congressional policy is to be perpetuated by recasting unconstitutional legislation, the analytically sound approach is to accept responsibility for [the] decision. Its justification cannot be by resort to legislative intent, as that term is usually employed, but by a different kind of legislative intent, namely the presumed grant of power to the courts to decide whether it more nearly accords with Congress' wishes to eliminate its policy altogether or extend it in order to render what Congress plainly did intend, constitutional. *Welsh v. United States,* 398 U.S. 333, 355–56, 90 S.Ct. 1792, 1804, 26 L.Ed.2d 308 (1970) (Harlan, J., concurring).

The Supreme Court in *Orr* implicitly recognized that alimony statutes are to be considered as providing a benefit to the receiver of the alimony when it stated that:

"It appears that Mr. Orr made no claim that he was entitled to an award of alimony from Mrs. Orr, but only that he should not be required to pay alimony if similarly situated wives could not be ordered to pay. It is therefore possible that his success here will not ultimately bring him relief from the judgment outstanding against him, as the State could respond to a reversal *by neutrally extending alimony rights to needy husbands as well as* wives." 440 U.S. at 271–72, 99 S.Ct. at 1107–08 (emphasis added) (footnote omitted).

On remand from the Supreme Court, the Alabama Court of Appeals in fact responded to reversal by neutrally extending alimony rights to needy husbands as well as wives. *Orr v. Orr,* 374 So.2d 895 (Ala.Civ. App.1979), *cert. denied,* 374 So.2d 898 (Ala. 1979), *appeal dismissed,* 444 U.S. 1060, 100 S.Ct. 993, 62 L.Ed.2d 738 (1980). Similarly, in *Beal v. Beal,* 388 A.2d 72 (Me.1978), alimony benefits were neutrally extended to needy husbands by the court. Maine, like Idaho, had repealed and replaced the statute which allowed alimony only to wives. In deciding whether to construe the former statute so as to cure its constitutional shortcomings, the court in *Beal* stated:

"There are innumerable outstanding decrees awarding alimony, and those decrees are relied upon by the beneficiaries. Furthermore, those decrees serve the overriding legislative purpose, which is clearly to provide alimony in order to help preserve the economic status quo that existed during marriage. By its repeal and replacement of the alimony statute in 1977 the legislature has made it clear that *as between abolishing alimony and making it available to husbands in appropriate cases, it would choose the latter.* We conclude that the dominant legislative purpose of the alimony statute, as it stood when this action was brought, is correctly served by treating it as extending eligibility to men as well as women. This result is supported by well-reasoned commentary on this subject. Brown, Emerson, Falk & Freedman, *The Equal Rights Amendment: A Constitutional Basis for Equal Rights for Women,* 80 Yale L.J. 871, 912–20 (1971)." 388 A.2d at 76.

A similar result was reached in *Peters v. Narick,* 270 S.E.2d 760 (W.Va.1980), in which the court held that:

"Choosing between invalidation or neutral extension requires an ascertainment of the predominate legislative purpose underlying the statute's enactment. *Beal v. Beal,* 388 A.2d 72 (Me.1978). That is to say, given the nature and substance of the statute, its legislative history, if any, considering it in the context of the larger domestic relations scheme of which it is a part, and considering the relevant economical, social, and historical implications, can it be validly concluded that benefits should be terminated to the class of persons who now benefit by the statute, i.e., women? We believe not. Clearly the legislative purpose embodied in the separate maintenance statute is to provide financial help to the dependent spouse and thereby preserve the economic status of the marriage pending further developments. This purpose would be thwarted by an invalidation of the statute, but by extending the statute's benefits to men we conclude the legislative purpose would be effectuated." 270 S.E.2d at 767.

*See also Gomez v. Perez,* 409 U.S. 535, 93 S.Ct. 872, 35 L.Ed.2d 56 (1973) (extending right to parental support to children of unwed parents); *Harrigfeld v. District Court,* 95 Idaho 540, 511 P.2d 822 (1973) (extending benefits of statutory definition of age of majority to eighteen year old males); *Adkins v. McEldowney,* 280 S.E.2d 231 (W.Va.1981) (extending right of illegitimates to inherit from both mother and father); *Thomas v. Rutledge,* 280 S.E.2d 123 (W.Va.1981) (extending same right to unemployment benefits to employee who voluntarily quits job to perform marital duties as is extended to employees who voluntarily quit for other reasons). *See generally* Ginsburg, Some Thoughts on Judicial Authority to Repair Unconstitutional Legislation, 28 Clev.St.L.Rev. 301 (1979).

Not only are the legislative purposes of former I.C. § 32–706 clearly served by holding that the benefits of alimony should be neutrally applied, but our legislature has also specifically acted to accomplish that very purpose. I.C. § 32–705, adopted in 1980 and set forth in note 1, *supra,* provides the benefits of alimony to needy spouses of either gender. The fact that the legislature chose to enact a new comprehensive scheme for divorce actions, a part of which scheme specifically extends eligibility for alimony to men as well as women, clearly tells us the continuing legislative intent as to the purposes of the alimony statute: Extend, do not abolish.

■ Finally, the potential harm of invalidating former I.C. § 32–706 cannot be overestimated. As pointed out in *Lovell v. Lovell,* 378 So.2d 418 (La.1979), in deciding to affirm an alimony award under a statute which the court in *Lovell* declared unconstitutional:

"Upon consideration of each of these factors, we conclude that our decision should not be applied retroactively. Our decision establishes a new principle of law by overruling clear past precedent on which litigants have relied. Innumerable divorced persons, both those paying and receiving alimony, have relied on the constitutionality of art. 160. . . . Moreover, retrospective application would undermine the objectives of art. 160. Finally, substantial inequity would result if prior judgments awarding alimony were declared invalid. It might well require new litigation in each case under the amended article in order to afford continued alimony payments. Also, it would subject divorced wives to suits by their former husbands seeking repayment of alimony paid by husbands under art. 160 prior to its amendment. Where a decision could produce substantial inequitable results if applied retroactively, there is ample basis for avoiding the 'injustice or hardship' by

a holding of nonretroactivity." 378 So.2d at 422.

The fact that havoc would result from voiding former I.C. § 32–706, and the fact that neutrally extending the benefits of alimony to needy husbands will not retroactively impose punishment or an economic or social hardship upon any class, strengthens our conclusion that, had the legislature initially considered the matter, it would have acted to extend the benefits of the alimony statute to needy husbands rather than abolish the statute altogether. We affirm the award in this case.[5]

III.

The second issue presented is whether the district court erred in awarding Myrna Murphey her attorney's fees subsequent to the division of community property. Appellant also urges that if we conclude that the award of attorney's fees was otherwise proper, we should invalidate the award because former I.C. § 32–704, which allows for awards of attorney's fees to wives but not husbands, violates the equal protection clause of the United States Constitution and art. I, § 2 of the Idaho Constitution.

■ This Court held in *Mifflin v. Mifflin,* 97 Idaho 895, 556 P.2d 854 (1976), that attorney's fees in divorce actions were community debts and were to be satisfied out of community property *prior* to division of the property. The court below, however, first divided the community property and then awarded Myrna Murphey her attorney's fees out of what had become, by judicial decree, Robert Murphey's separate property. This was error, the attorney's fee award should have been subtracted from the net community estate prior to its division. On remand, the court will adjust the property distribution accordingly.

As to the constitutionality of former I.C. § 32–704, which was applicable to this action, our reversal of the award in question moots the issue. And, we do not perceive

---

**5.** The Court is aware of the Court of Appeals' opinion in *Neveau v. Neveau,* 103 Idaho 707, 652 P.2d 655 (App.1982) No. 13896, which was filed on October 12, 1982. Our opinion was written prior to the filing of the opinion in *Neveau; Neveau* not yet being final we only mention and do not discuss it.

that it will arise again in this case if the trial court adheres to the teachings of *Brammer v. Brammer,* 93 Idaho 671, 471 P.2d 58 (1970), in which this Court held that attorney's fees for *either party* in a divorce proceeding could properly be considered community debts, and therefore be satisfied out of community property.

If on remand the parties cannot arrive at an agreement regarding attorneys' fees, the court may restructure the property award to accommodate any award of attorney's fees which it may make, taking into account the services performed in this appeal.

The award of alimony is affirmed. The award of attorney's fees is reversed and remanded for proceedings consistent with this opinion. Each party to bear his and her costs on appeal.

McFADDEN and DONALDSON, JJ., and W.E. SMITH, J., pro tem, concur.

SHEPARD, J., dissents.

McFADDEN, J., registered his vote prior to his retirement on August 31, 1982.

DONALDSON, Justice, specially concurring.

I concur with the majority conclusion that former I.C. § 32–706, 1945 Idaho Sess. Laws, ch. 125, § 2 p. 191, is unconstitutional. *Orr v. Orr,* 440 U.S. 268, 99 S.Ct. 1102, 59 L.Ed.2d 306 (1979). While ordinarily the Court should be hesitant to neutrally extend a statute to cure constitutional infirmities, such an extension seems in the best interests of fairness and justice under these circumstances. Our legislature for decades has had some form of alimony in effect and recently enacted a gender-neutral provision. I.C. § 32–705 (Supp.1982). By neutrally extending the statute to include needy husbands, our decision gives continued effect to the legislative purpose to provide alimony to needy wives. *Orr v. Orr,* 374 So.2d 895 (Ala.Civ.App.1979); cert. denied, 444 U.S. 1060, 100 S.Ct. 993, 62 L.Ed.2d 738 (1980); *Beal v. Beal,* 388 A.2d 72 (Me.1978).

The retroactive effect of this decision should be limited to the instant case and those pending, if any, which raise the same issue; it should not apply retroactively to all preceding cases. *See Rogers v. Yellowstone Park Co.,* 97 Idaho 14, 539 P.2d 566 (1975) (on rehearing); *Thompson v. Hagan,* 96 Idaho 19, 523 P.2d 1365 (1974).

SHEPARD, Judge, dissenting.

In my judgment the majority opinion suffers from a series of minor deficiencies. It ignores opinions of this Court stretching back almost to statehood. It makes a shambles of our law of statutory construction and interpretation in its rush to obtain a preconceived result. It ignores and does not even condescend to mention the more recent decisions of this Court dealing with the problem of alimony and laying down standards governing its award. Hence, I dissent.

It is beyond cavil that the statute under which the trial court here purported to award alimony is unconstitutional. *Orr v. Orr,* 440 U.S. 268, 99 S.Ct. 1102, 59 L.Ed.2d 306 (1979); *Olsen v. Olsen,* 98 Idaho 10, 14, 557 P.2d 604, 608 (1976) (Shepard, J. dissenting). The majority so acknowledges. The majority, "having arrived at the relatively easy conclusion" that the statute is unconstitutional, then engages in "the more difficult task of deciding whether that decision should be applied retroactively." I find no question of retroactivity. Appellant Murphey resisted the award of alimony throughout the trial court. As distinguished from the situation in *Orr,* the appellant here has at no time consented to an award of alimony against him. He contends simply that since an award of alimony in Idaho is statutory in origin, and since the statute purporting to authorize an award of alimony against a man is unconstitutional, the trial court had no authority to award alimony against him. The majority's quantum leap to an invented and mythical question of retroactivity is neither explained nor rationalized and is without any foundation in logic or the facts in the instant case.

While retroactivity of today's holding that the alimony statute is unconstitutional would pose substantial concerns, those concerns are not present in this suit. The

Amended Judgment of Divorce was entered on May 4, 1979. *Orr* was handed down by the Supreme Court two months earlier, March 5, 1979. At the time the Murpheys' case was finally decided by the trial court, *Orr* represented the law of the land, and the majority acknowledges that our statute is no different from the Alabama statute struck down in *Orr* in that it awards alimony to wives only. Thus, as of March 5, 1979, it was unconstitutional for statutes to award alimony to wives only. This case, therefore, does not present the issue of retroactivity which the majority so arduously works to mitigate.

If the majority were truly concerned with the impact that striking down the alimony statute as unconstitutional would have on cases that have come to final judgment, instead of using those concerns as a smokescreen to arrive at its preconceived result, any fears of the "havoc" that would result from disturbing those decided cases would be put to rest by a simple declaration that our holding today is not retroactive and does not affect those cases. *See Rogers v. Yellowstone Park Co.,* 97 Idaho 14, 25–26, 539 P.2d 566, 577–78 (1975) (on rehearing) (applying abolition of interspousal immunity to the case at issue and all others arising thereafter); *State v. Whitman,* 96 Idaho 489, 531 P.2d 579 (1975) (holding that the decision in *State v. French,* 95 Idaho 853, 522 P.2d 61 (1974), was not retroactive); *Thompson v. Hagan,* 96 Idaho 19, 523 P.2d 1365 (1974) (holding that the guest statute was unconstitutional but refusing to hold the ruling retroactive).

Such an approach would be far more consistent with the "virtue" of judicial restraint which the author of today's opinion finds so commendable. *See Rice v. Rice,* 103 Idaho 85, 645 P.2d 319 (1982) (Bistline, J. concurring and dissenting). Even were we to nullify the statute without comment, that would not preclude a later holding that the decision was not retroactive. *See State v. Whitman, supra; Harrell v. State,* 386 So.2d 390 (Miss.1980).

The specter of retroactivity then arises again from the ashes of the majority's rul-ing extending the statute. Other than the brief, cryptic comment that extension will not retroactively impose punishment or hardship on any class, the courts and attorneys of this state are given no guidance as to whether impecunious husbands will be able to reopen their long-closed divorce decrees to obtain alimony from their former wives. Such a result could work the very "havoc" that the majority purports to be avoiding. It also further demonstrates that a preconceived result rather than the fear of retroactivity actually motivates the majority.

Without support in law or logic the majority inserts, as an apparent afterthought, its line that it is a "fact" that judicial extension will not retroactively impose a punishment or hardship on any class. I wonder whether this conclusion is based upon the majority's belief that alimony is not a punishment. Hence, the majority could be signaling district courts that it is permissible for husbands to reopen their divorce decrees because to do so imposes no punishment on wives as a class. Perhaps the majority believes that judicial extension of a statute can never operate retroactively. If so, this is mistaken. We have stated many times that the issue of retroactivity of a decision is discretionary with the overruling court. *Rice v. Rice, supra; Rogers v. Yellowstone Park Co., supra; Thompson v. Hagan, supra.* No reason is advanced why this rule should not be followed today. Finally, if the majority is impliedly ruling that extension of the alimony statute is not to operate retroactively, it should articulate its reasons therefor, under the test set forth in *Rogers, supra,* and *Thompson, supra.* However, that issue cannot be faced directly, for to do so would undermine all the "reasons" the majority uses to justify judicially extending the statute in the first place.

Succinctly, what the majority is doing is saying that we must legislate and judicially extend this statute, because if we do not, there will be problems with retroactive application, while ignoring the more simple *judicial* remedy of holding that the ruling is

not retroactive. Then after making that ruling, the Court perhaps discovers the option of holding that its decision is not retroactive and applies it to the new rule it creates by judicial extension of the alimony statute. Such judicial "arabesque" is amazing to behold. *C.f. Gordon v. West,* 103 Idaho 100, 645 P.2d 334 (1982) (Bistline, J., dissenting).

The majority then by linguistic legerdemain seeks to ascertain the legislative intent of the 1875 Territorial Legislature, as if those members were aware that their then-drafted statute would be held unconstitutional 100 years later. Although failing to recognize that it was indeed the 1875 Territorial Legislature which originally drafted this statute, the majority concludes that the members of that legislature would have neutrally extended the "benefits" of alimony. I can think of nothing more ludicrous. Since the last century that statute has been interpreted by this Court according to its plain terminology as authorizing the award of alimony only to women upon a finding of fault of a man. *E.g., Jackson v. Jackson,* 87 Idaho 330, 334, 393 P.2d 28, 30 (1964) ("Alimony . . . is designed *solely* for the benefit of the *wife*") (emphasis supplied); *Day v. Day,* 15 Idaho 107, 115, 96 P. 431, 433 (1908) ("This statute empowers the court . . . to compel the *husband* to provide *her* [the wife] with the means necessary to enable *her* to prosecute or defend the action."); *Wyatt v. Wyatt,* 2 Idaho 236, 10 P. 228 (1886) (allowance of alimony and attorney fees to *wife pendente lite* in discretion of the court).

The majority finds it "apparent" that the legislature would prefer that we extend this statute rather than simply nullify it. The majority does not tell us what evidence it relies on to reach this "apparent" conclusion. Nor does it tell us what legislature it is referring to. This section was originally drafted by the Territorial Legislature in 1875. Rev.Stat. of Idaho Terr. § 2474 (1887). It is not at all "apparent" to me that those gentlemen would have intended that this Court extend the statute to include awards of alimony against women for support of their ex-husbands. Nor is such

an intent discernable from the language of the statute. Its title is "Alimony for the fault of husband," hardly indicating a neutral intent. The opinions of this Court likewise make it clear, if such explication were necessary, that the statute was not intended to be gender-neutral. *Jackson v. Jackson, supra; Day v. Day, supra; Wyatt v. Wyatt, supra.* It seems quite likely to me that, in view of the times in which this law was passed, it was and is founded on romantic paternalism or a vestigal chivalric notion of a woman's place in society rather than a concern for all needy spouses. *See Olsen v. Olsen,* 98 Idaho 10, 557 P.2d 604 (1976) (Shepard, J. dissenting). The territorial legislature demonstrably viewed the family as under the complete authoritarian domination of the husband with the wife playing a subordinate role. Section 2494 of the Territorial Laws provided: "The husband is the head of the family. He may choose any reasonable place or mode of living, and the wife *must* conform thereto" (emphasis added). The husband was given the power to manage and control his wife's *separate* property. Rev.Stat. of Idaho Terr. § 2498. Likewise, the husband had absolute power of disposition over the community property. *Id.* at § 2505. Alimony was provided for the wife upon dissolution of the marriage to provide her with some form of protection after she left the protective embrace of her husband and master. *See Wyatt v. Wyatt, supra.* However, the right to alimony was not absolute. The wife could forfeit it if her misconduct was the ground for divorce, because § 2474 permitted alimony only where divorce was granted for the fault of the husband. The words of Justice Bradley, written at about this same time, provide an illuminating insight into what the perceived role of women was:

"[T]he civil law, as well as nature herself, has always recognized a wide difference in the respective spheres and destinies of man and women. Man is, or should be, woman's protector and defender. The natural and proper timidity and delicacy which belongs to the female sex evidently unfits it for many of the occupations of

civil life. The constitution of the family organization, which is founded in the divine ordinance, as well as in the nature of things, indicates the domestic sphere as that which properly belongs to the domain and functions of womanhood. The harmony, not to say identity, of interests and views which belong, or should belong, to the family institution is repugnant to the idea of a woman adopting a distinct and independent career from that of her husband. * * * The paramount destiny and mission of woman are to fulfill the noble and benign offices of wife and mother. This is the law of the Creator." *Bradwell v. Illinois,* 83 U.S. (16 Wall.) 130, 141, 21 L.Ed. 442 (1873) (Bradley, J. concurring).

Given this legal and social backdrop, it is a highly dubious proposition, at best, to postulate that the 1875 Territorial Legislature would have intended this Court to make its alimony statute gender-neutral to allow the head of the household to obtain alimony payments from his supposedly subservient wife.

The majority then turns to a statute enacted after the trial of this cause and draws therefrom the conclusion that the 1875 legislature intended its statute to be neutrally extended because the 1980 legislature, when it repealed the 1875 act, replaced it with a gender-neutral maintenance statute. The majority then opines that the legislative intent in the old statute may be drawn from the new. Such is, of course, at odds with all opinions of this Court which dictate a contrary result. This Court has stated, "The *legislative intent* that controls in the construction of statutes has reference to the legislature which passed a given act" (emphasis in original). *Reed v. Huston,* 24 Idaho 26, 33, 132 P. 109, 111 (1913). The legislature which passed this act was, of course, the 1875 territorial legislature, not the 1980 legislature, and the 1980 legislature was at least some different members than the 1875 legislature, making it impossible to impute a gender-neutral intent of the 1875 legislature from the actions of the 1980 legislature. Heretofore, well established rules of statutory construction

dictated that amendatory legislation be read as providing a change in legislative intent. *Hopson v. North American Ins. Co.,* 71 Idaho 461, 233 P.2d 799 (1951); *Stewart v. Common School Dist. No. 17,* 66 Idaho 118, 156 P.2d 194 (1945); *Moody v. State Highway Dept.,* 56 Idaho 21, 48 P.2d 1108 (1935). Otherwise, there would be no need for new or amendatory legislation. Nevertheless, today the majority holds that when the 1980 legislature comprehensively revised the maintenance statute to make it gender-neutral, thereby indicating a clear change in legislative intent, the same gender-neutral intent can somehow be transferred back to the 1875 territorial legislature. In effect the majority constructs a judicial time machine and shuttles legislatures backwards and forwards in time as suits the majority's purpose. The 1875 legislature is brought forward to the enlightened 1980s where the sexes are equal. The 1980 legislature is sent far enough back in time that the majority can use its intent to ascertain the meaning of an 1875 statute.

The majority then engages in what in my opinion is its most egregious error. It discusses extending the "benefits" of the alimony statute in a neutral fashion, borrowing from the dicta in *Orr v. Orr, supra.* The position of the majority in regard to the appellant here is simply incongruous. Appellant Murphey makes no claim to alimony, which claim, of course, is not authorized by the statute. He does not complain about being excluded from "benefits." He simply says: I am penalized solely and only because of my sex. His position is much like any other member of a suspect classification group who is required to ride in the back of the bus, prohibited from using a public facility, required to pay a special tax, or prohibited from cohabiting with members of other classes. In all such cases, courts have not hesitated to eliminate such burdens and penalties imposed upon one class as contrasted with other classes.

Justice Harlan first articulated the judicial extension doctrine as follows:

"Where a statute is defective because of underinclusion there exist two remedi-

al alternatives: a court may either declare it a nullity and order that its benefits not extend to the class that the legislature intended to benefit, or it may extend the coverage of the statute *to include those who are aggrieved by exclusion."* *Welsh v. United States,* 398 U.S. 333, 361, 90 S.Ct. 1792, 1807, 26 L.Ed.2d 308 (1970) (Harlan, J., concurring in the result) (emphasis added).

This language has been accepted by this Court, *Harrigfeld v. District Court of the Seventh Judicial District,* 95 Idaho 540, 511 P.2d 822 (1973), as well as by the United States Supreme Court, *Califano v. Westcott,* 443 U.S. 76, 99 S.Ct. 2655, 61 L.Ed.2d 382 (1979). I agree that courts are presented with this option. However, judicially extending a statute involves rewriting legislation, and the courts should not lightly assume the mantle of writing the law as opposed to interpreting the law. When we judicially extend a statute, we tread perilously close to the boundaries of the judicial function and risk infringing upon legislative prerogatives.

In the instant case the majority analyzes the situation as though someone "aggrieved by exclusion" from the coverage of the statute is asking this Court to extend the benefit of the statute to him. Here nothing could be further from the truth. Robert Murphey is not seeking to have the benefits of the statute extended to him, nor could Myrna Murphey argue to have the benefits extended to her, because the statute already provides just that. Hence, whatever merit the Court's discussion of extending benefits might have if Robert Murphey were an impecunious husband who needed the support of his wealthy wife, it is simply irrelevant to the case before us today.

The majority attempts to sidestep the issue of judicially extending a burden, by finding that alimony was not intended as a punishment, thereby implying that it cannot be a burden, and by stating that it provides for the need of the wife. While I do not subscribe to the theory that alimony is not a punishment, *Olsen v. Olsen,* 98 Idaho 10, 14–22, 557 P.2d 604, 608–616

(Shepard, J., dissenting), even assuming it is not a punishment, I cannot understand why it is not a burden. Robert Murphey is obligated to pay $200 per month until his wife remarries or the court modifies its order. I believe that the payment of $200 per month, or any other amount for that matter, is a financial burden upon the person obligated to pay, whether it is for alimony, car payments, or credit card charges. The fact that someone benefits from these payments does not ameliorate the burden. Indeed, this burden is more severe than most, for it is open-ended. At least with other types of monthly payments, the obligor can plan for the day when the debt is satisfied. Even Professor Ginsberg, an advocate of judicial extension of alimony statutes, following *Orr* has the intellectual fortitude to recognize and acknowledge, in an article cited with approval by the majority, that this case is not a typical instance of extending benefits to an excluded class but involves "burden extension." R. Ginsburg, *Some Thoughts on Judicial Authority to Repair Unconstitutional Legislation,* 28 Clev.St.L.Rev. 301, 320 (1979). Neither she nor the majority is able to cite any precedent for this jump from benefit extension to burden extension.

Judicial extension is ordinarily undertaken in two types of cases. The first is when a person of the *excluded* class seeks to recover from a private party. *E.g., Levy v. Louisiana,* 391 U.S. 68, 88 S.Ct. 1509, 20 L.Ed.2d 436 (1968) (illegitimate children sought to recover for wrongful death of their mother—statute extended to include illegitimates); *Harrigfeld v. District Court of Seventh Judicial Dist.,* 95 Idaho 540, 511 P.2d 822 (1973) (heirs at law of male under 21 sought to recover for .his wrongful death—statute extended to include males 18 to 21). The second category is when a person seeks to recover from a government benefit program from which he or she is wrongfully excluded. *E.g., Califano v. Westcott,* 443 U.S. 76, 99 S.Ct. 2655, 61 L.Ed.2d 382 (1979) (unemployed female sought AFDC benefits granted only to males—statute extended to include females); *Weinberger v. Wiesenfeld,* 420 U.S.

636, 95 S.Ct. 1225, 43 L.Ed.2d 514 (1975) (male sought social security child care benefits granted only when employed father died—statute extended to pay benefits when employed mother died). Outside of the *Orr, Beal* and *Peters* cases, which erroneously characterized extension of alimony statutes in circumstances such as these as benefit extensions, there is no authority approving burden extensions. In fact, in the other cases cited by the majority, the parties all sought to have the benefits granted others extended to them.

In *Gomez v. Perez,* 409 U.S. 535, 93 S.Ct. 872, 35 L.Ed.2d 56 (1973), an illegitimate child sought to obtain support from her natural father. The Court found the distinction between legitimate and illegitimate children unconstitutional and extended the benefits to the aggrieved child. As previously set forth, *Harrigfeld, supra,* involved heirs of a male under 21 who sought the benefits of majority statutorily granted to 18–21 year old females and this Court extended those benefits.

In *Adkins v. McEldowney,* 280 S.E.2d 231 (W.Va.1981), illegitimate children sought to inherit from their fathers and the court extended the statute to include them. Similarly, in *Thomas v. Rutledge,* 280 S.E.2d 123 (W.Va.1981), a person was seeking unemployment benefits denied for arbitrary reasons and the court extended the statute to include that class.

Additionally, the fact that a person is excluded from the benefits granted another does not mandate that this Court judicially extend the benefit. In the past, we have chosen to reverse a district court decision extending a benefit and struck it down in its entirety. In *Sterling H. Nelson & Sons v. Bender,* 95 Idaho 813, 520 P.2d 860 (1974), carriers of processed agricultural commodities filed suit seeking to be included in the higher weight limits authorized for carriers of raw agricultural commodities. This Court struck down the classification as arbitrary but refused to extend the higher weight limits to include processed agricultural commodities.

The majority completely ignores a line of cases in which parties convinced the courts that a burden had been placed upon them unconstitutionally and the courts, rather than extending the burden to all, responded by striking down the burden in its entirety. The Supreme Court, in *Iowa-Des Moines National Bank v. Bennett,* 284 U.S. 239, 52 S.Ct. 133, 76 L.Ed. 265 (1931), was faced with the issue of unequal tax treatment accorded two banks. The Iowa Supreme Court had ordered that the more burdensome tax treatment accorded these two banks be extended to all other banks in the state, but the United States Supreme Court reversed, refusing to require the burdened banks to seek to have other banks equally burdened and striking down the burden in its entirety. *Accord Sears Roebuck & Co. v. State Tax Comm'n,* 214 Md. 550, 136 A.2d 567 (1957); *Comm'n of Corporations & Taxation v. Flaherty,* 306 Mass. 461, 28 N.E.2d 433 (1940). In *Skinner v. Oklahoma,* 316 U.S. 535, 62 S.Ct. 1110, 86 L.Ed. 1655 (1942), the Court struck down Oklahoma's sterilization of larcenists statute as violative of equal protection. On remand the Oklahoma Supreme Court expressly refused to judicially extend the burden of sterilization to avoid the constitutional objections. *Skinner v. State,* 195 Okl. 106, 155 P.2d 715 (1945). In a long line of cases involving racial discrimination, the Supreme Court has struck down the statutory or administrative burdens unconstitutionally applied to blacks, rather than extending them to persons of all races. *E.g., McLaughlin v. Florida,* 379 U.S. 184, 85 S.Ct. 283, 13 L.Ed.2d 222 (1964) (statute precluded interracial cohabitation but the Court did not extend it to cohabitation between members of the same race); *Johnson v. Virginia,* 373 U.S. 61, 83 S.Ct. 1053, 10 L.Ed.2d 195 (1963); *Turner v. City of Memphis,* 369 U.S. 350, 82 S.Ct. 805, 7 L.Ed.2d 762 (1962); *McLaurin v. Oklahoma State Regents for Higher Education,* 339 U.S. 637, 70 S.Ct. 851, 94 L.Ed. 1149 (1950).

The state courts have reacted in a like manner. In *People v. Yocum,* 31 Ill.App.3d 586, 335 N.E.2d 183 (1975), the court nullified a deviate sexual conduct statute that

applied only to fathers and stepfathers, rather than extending the statute to include female offenders. In *Commonwealth v. MacKenzie,* 368 Mass. 613, 334 N.E.2d 613 (1975), a statute penalizing fathers of illegitimate children but not the children's mothers, was held unconstitutional but was not extended to become gender-neutral. Likewise, the Mississippi court struck down a "Fondling Statute" rather than judicially extending its penalties [1] to females. *Tatro v. State,* 372 So.2d 283 (Miss.1979). In pertinent language, the court stated:

"The legislative intent to confine application of the statute to male persons, not simply to 'any' person as in most criminal statutes, manifests an intentional exclusion of females. The word 'male' in the statute cannot be ignored without destroying the clear legislative intention to limit application of the statute to males." *Id.* at 284–85.

Similarly, in our statute the word "husband" cannot be judicially excised without violating the legislature's intent. Nor has the majority found any authority for construing the word "husband" to include women. This extension of burdens that the majority attempts today is simply not authorized by the universally accepted test for judicial extension, which the majority purports to apply. It permits extension "to include those who are aggrieved by exclusion." *Welsh v. United States, supra,* 398 U.S. at 361, 90 S.Ct. at 1808. No one aggrieved by exclusion is a party to this lawsuit. I had always thought that courts were to deal with the cases before them. If today we can extend "benefits" to persons not parties to this suit, when no one who is a party to the suit asked for those benefits, why do we even need cases? Tomorrow we may thumb through the Code, find a statute we don't like, and strike it down, or even better, rewrite it, all without the aggravation of having to wait for a litigant to request that relief.

Further, I believe that even assuming the majority's tortured reasoning somehow reaches a correct result and that the statute somehow does authorize an award of alimony to a man, it nevertheless suffers fatal defects. It has long been held that unconstitutional discrimination may not be practiced under the aegis of a statute or ordinance which, while bland and inoffensive on its face, is used as a vehicle to practice discrete discrimination. *Yick Wo v. Hopkins,* 118 U.S. 356, 6 S.Ct. 1064, 30 L.Ed. 220 (1886). *See also Hunter v. Erickson,* 393 U.S. 385, 89 S.Ct. 557, 21 L.Ed.2d 616 (1969); *Reitman v. Mulkey,* 387 U.S. 369, 87 S.Ct. 1627, 18 L.Ed.2d 830 (1967); *Hernandez v. Texas,* 347 U.S. 475, 74 S.Ct. 667, 98 L.Ed. 866 (1954). Hiring practices and the like have been struck down on the basis of resultant discrimination, albeit the formal authorizing documents do not authorize such classification. *See generally Dothard v. Rawlinson,* 433 U.S. 321, 97 S.Ct. 2720, 53 L.Ed.2d 786 (1977); *Albemarle Paper Co. v. Moody,* 422 U.S. 405, 95 S.Ct. 2362, 45 L.Ed.2d 280 (1975); *Griggs v. Duke Power Co.,* 401 U.S. 424, 91 S.Ct. 849, 28 L.Ed.2d 158 (1971). Here, assuming the statute authorized the penalization of women by requiring them to pay an alimony award, it is a simple fact that there is not, to my knowledge, one single recorded case anywhere in the English-speaking world which has authorized a non-consensual award of alimony against a woman. I am bold to suggest that such a case cannot be found. I know of no trial judge who has ever made an award of alimony against a non-consenting female. Although the past forty years have brought many changes in the status of women in this country, I doubt that the mind set of our society is ready for that change. Consequently, because this alimony statute, which the majority today dis-

---

1. It could be argued that criminal statutes are different in that they cannot be judicially extended without offending the *ex post facto* clause. Clearly the courts could judicially extend the scope of the statute prospectively without creating any such problems. Secondly, it could be argued that there is no corresponding benefit to be extended as there is in alimony. I believe there clearly is a benefit to the victims of such crimes as well as the well-being of society. The fact that these are benefits, however, does not transform the case from one of a "burden extension" into one of "benefit extension."

covers to be gender-neutral, has systematically and continuously been applied in a discriminatory manner and which will continue to be so applied in the foreseeable future, it must be struck down in its entirety.

The majority opinion in reviewing appellant's protest of the imposition of alimony, totally ignores the standards set forth by this Court in its most recent line of cases regarding the imposition of alimony. Hence, even assuming that the majority's convoluted reasoning that the alimony imposed here is somehow constitutional, nevertheless there is no showing in the record before us which justifies the necessity of imposing an alimony obligation upon the appellant. Further assuming that the later legislative enactment of 1980 has some significance to the case at bar, the clear requirements of those statutes find no satisfaction in the record of the instant case.[2]

The record made in the trial court demonstrates little, if anything, regarding the parties. They were married 22 years and their children are beyond the age of majority. The respondent has no one to support but herself. We are told nothing of the education or abilities of the respondent other than at some time in the past she has worked as a secretary and at the time of trial was employed as a food service worker. We are not told if she is educated, could be educated, or plans to be educated, or whether she has the ability to earn her own living free from the imposed servitude of her former husband.

As to the appellant, we likewise have little or no information other than his *gross* income at the time of trial. We are not told whether he is educated, what his employment potential is, nor the state of his health nor any other factor necessary to an alimony decision. We are merely told by the trial court that he was at "fault" in the breakup of the marriage and he shall, therefore, be penalized to the extent of a probable $50,000 to $60,000 over the rest of his lifetime.

Insofar as the division of the property is concerned, the trial court held that the community property of the parties was valued at $83,697.33. Of that community property, the appellant ex-husband was awarded $24,748.00. It can hardly be said that the respondent ex-wife came away from the marital dissolution as a destitute person needful of public assistance. Although there are veiled hints in the record that the respondent ex-wife is or was the heir and beneficiary of a family estate, such is not delineated, and the record contains only an indication by the trial court that contributions of her separate property to the community should be reimbursed.

Even assuming the correctness of the majority's conclusion regarding the constitutionality of the alimony statute, I would nevertheless reverse the award of alimony on the basis that there had been no compliance with the standards laid down by this Court necessary to support an alimony award. *See, e.g., Ross v. Ross,* 103 Idaho 406, 648 P.2d 1119 (1982); *Mifflin v. Mifflin,* 97 Idaho 895, 556 P.2d 854 (1976); *Glavin v.*

---

2. I.C. § 32–705 provides:

"32–705. Maintenance.—1. Where a divorce is granted, for an offense of either spouse, including a divorce granted upon the complaint of the party at fault, the court may grant a maintenance order for the innocent spouse if it finds that the innocent spouse seeking maintenance:
(a) Lacks sufficient property to provide for his or her reasonable needs; and
(b) Is unable to support himself or herself through employment.
2. The maintenance order shall be in such amounts and for such periods of time the court deems just, after considering all relevant factors which may include:

(a) The financial resources of the spouse seeking maintenance, including the marital property apportioned to said spouse, and said spouse's ability to meet his or her needs independently;
(b) The time necessary to acquire sufficient education and training to enable the spouse seeking maintenance to find employment;
(c) The duration of the marriage;
(d) The age and the physical and emotional condition of the spouse seeking maintenance;
(e) The ability of the spouse from whom maintenance is sought to meet his or her needs while meeting those of the spouse seeking maintenance;
(f) The tax consequences to each spouse."

*Glavin,* 94 Idaho 813, 498 P.2d 1286 (1972); *Phillips v. Phillips,* 93 Idaho 384, 462 P.2d 49 (1969); *Saviers v. Saviers,* 92 Idaho 117, 438 P.2d 268 (1968).